**FILED**

JAN 1 4 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

A.N.S.W.E.R. (Act Now to Stop War and End
    Racism) Coalition
1247 E Street, S.E.
Washington, D.C. 20003

Michael Berg
Westchester, PA

REV. GRAYLAN S. HAGLER
Pastor, Plymouth Congregational Church,
United Church of Christ
Washington, D.C.

MUSLIM AMERICAN SOCIETY
 FREEDOM FOUNDATION
1050 17th Street
Washington, D.C., 20036

NATIONAL COUNCIL OF
 ARAB AMERICANS
Davis, California

       Plaintiffs,

    v.

Gale A. Norton, Secretary of the Interior and
Fran Mainella, Director, National Park Service,
1849 C Street, N.W.
Washington, D.C., 20240
*in official capacity*

and

W. Ralph Basham
Director, U.S. Secret Service
245 Murray Drive

:    CASE NUMBER   1:05CV00071

:    JUDGE: Gladys Kessler

:    DECK TYPE: TRO/Preliminary Injunction

:    DATE STAMP: 01/14/2005

:    Case No.

1

Washington, D.C., 20223          :
*in official capacity*           :
                                 :
                Defendants.      :
_____:

## COMPLAINT FOR EMERGENCY
## INJUNCTIVE RELIEF
## TO PRECLUDE DENIAL OF ACCESS
## TO THE 2005 INAUGURAL PARADE ROUTE
### (Violations of the First Amendment and the Equal Protection Clause)

1.    The Inaugural Parade is not an invitation only event. It is the perhaps the most public of all public ceremonial events in a democracy, the inauguration of the President.

2.    The government seeks to privatize vast portions of the sidewalks along Pennsylvania Avenue, reserving nearly all primary spaces along the parade route to those pre-approved by a single favored political group, the Bush-Cheney Presidential Inaugural Committee (PIC). The public and in particular anti-war demonstrators, tens of thousands of whom seek to *line the parade route* to peaceably assemble and engage in free speech and to petition the government for a redress of grievances, are literally excluded from thousands of linear feet that horizontally consume nearly all of the primary locations along the front line of the Inaugural Parade route of the President as well as additional space in front of, around, between and in the PIC's exclusive bleachers.

3.    After repeated stalling by the NPS and refusal to act on the first-filed permit, the public and the Plaintiff anti-war demonstrators now find that they are literally excluded from the vast breadth of the Inaugural Parade route upon which the Chief Executive travels on this public ceremonial day.

4.    The government claims it may exclude from these public spaces all but the privileged and

2

hand-selected. The government has conditioned access to these vast areas of Pennsylvania to those who are screened and approved by, have an association with, and who also must financially support (through the purchase of a ticket or otherwise), the private partisan Bush-Cheney Presidential Inaugural Committee.

5.    According to the Government, which is operating in blatant violation of the existing *constitutionally mandated* permitting system, it may grant to the Bush-Cheney Inaugural Committee all the space the Committee wishes to exclude the public from, and whatever portions of undesired remain will be set aside for the public, anti-war demonstrators, and any other group seeking a permit.

6.    At issue is Pennsylvania Avenue, America's "Main Street." People want to line the route to communicate their individual and group political messages, whether those may be of support for or opposition to existing policies. The public and dissenters are excluded from a minimum of over 5,600 linear feet along the parade route.

7.    The impact of this exclusion is plain. It denies people their right to assemble and congregate along the route so they can demonstrate through their physical presence the breadth of support for their message. The restrictions on disfavored groups are intended to create the appearance of uniformity and support for the policies of this administration, when tens of thousands have come from across the country to be able to demonstrate by their presence a different political message. The signs, the manifestations of dissent, the cacophony of voices and images - - some of which support and some of which oppose certain government policies - - is what democracy looks like. Democracy cannot be stage managed or penned or suppressed or improperly restricted and maintain either legitimacy

3

or vibrancy.

8.    There is no substitute time or place or event for the Inaugural Parade.

9.    As recently as December 20, 2004, the NPS was engaged with Plaintiff in detailed

discussions about sound and setup for Freedom Plaza, all the while apparently never

intending to grant the permit for Freedom Plaza.

10.   The instant lawsuit does not challenge the validity of the White House set-aside of public

space for the Inaugural Committee, but does seek to preserve access to those other NPS

parks - including the sidewalks of Pennsylvania Avenue - for demonstration activity.

11.   Plaintiffs seek injunctive relief from this Honorable Court such that the public and

demonstrators can regain its rightful access to the sidewalks of Pennsylvania Avenue to

be able to line the Inaugural Parade with whatever messages they wish to convey, and so

that ANSWER may use Freedom Plaza for their rally and demonstration.

12.   Plaintiffs seek the Court to issue injunctive relief prohibiting NPS from denying access to

public space along the parade route for the general public, including anti-war

demonstrators and from revoking their permit, including specifically for use and access of

Freedom Plaza.

13.   With respect to the sidewalks of Pennsylvania Avenue, plaintiffs seek the following relief

in the alternative (each of which options is calculated to open the sidewalks to the public

and enable the public, including anti-war protestors, to line the parade route with

expressive activity):

a.    *Alternative 1* - That the Court enjoin NPS from revoking ANSWER's permit,

with ANSWER leaving the permitted sidewalk areas as open to the public without

4

discrimination based on political association or belief or expression, or

b.   *Alternative II* - That the Court enjoin NPS from revoking ANSWER's permit with respect to Freedom Plaza and other assembly sites requested, and permanently enjoin the NPS from issuing an exclusive-use permit for the sidewalks of Pennsylvania Avenue on Inauguration Day.

## PARTIES

14.   Plaintiff A.N.S.W.E.R. COALITION (Act Now to Stop War & End Racism) is an unincorporated grassroots organization that engages in community and national political organizing and activism including carrying out meetings, protests, mass demonstrations, and other educational activities in opposition to war and racism. It has organized the largest demonstrations against the war and occupation of Iraq and in support of civil rights in civil liberties in Washington, and in other cities around the country over the past three years.  A.N.S.W.E.R.'s national headquarters is in Washington, D.C. Plaintiff ANSWER seeks to organize and facilitate the showing of the mass sentiment in the United States of opposition to war, exploitation, and bigotry, though the tens of thousands of people who wish to line the Inaugural Route.

15.   Plaintiff MICHAEL BERG is a resident of West Chester, Pennsylvania. He has been an outspoken advocate in support of peace and justice and against war and conquest by the U.S. government. He suffered the death of his son Nicholas last year, a civilian who was killed in Iraq. Plaintiff BERG intends and desires to have access to Pennsylvania Avenue, as any member of the general public, and without being required to make a donation to or be screened and approved by the Bush-Cheney Presidential Inaugural Committee.  He

5

wishes to join with tens of thousands of other like-minded individuals in a display

throughout and along the breadth of the Inaugural route and communicate with the Chief

Executive of the United States and other officials, holding a sign reading "Our Children

Died for the Sins of George Bush and Donald Rumsfeld."

16.  Plaintiff REV. GRAYLAN S. HAGLER is Pastor of the Plymouth Congregational

Church, United Church of Christ and President of Ministers for Racial, Social, and

Economic Justice, an organization of clergy nationwide. He is a resident of Washington,

DC. Plaintiff Rev. HAGLER, as a District of Columbia resident seeks to have access to

the public sidewalks of the District of Columbia without such sidewalk usage being

restricted and limited for partisan enterprise and privatization. He seeks to be able to

come, with all others on a first come first served basis to Pennsylvania Avenue on

Inauguration Day, and bring his message for peace and social justice and stand with tens

of thousands of other like minded individuals along the length of the parade route

expressing this viewpoint. He also seeks to organize and encourage colleagues and

community members to be able to join him in these free speech and associational

activities, who are currently dissuaded from attending because of the apparent lack of

access to public space without being screened and approved by and making a donation to

the Bush Cheney Presidential Inaugural Committee.

17.  Plaintiff MUSLIM AMERICAN SOCIETY FREEDOM FOUNDATION is an

organization devoted to building an empowerment process for the American Muslim

community through civil education, participation, community outreach and coalition

building; to forge positive relationships with other institutions outside the community,

6

and to ensure and facilitate the protection of civil rights and liberties for American

Muslims and all Americans. Plaintiff MAS FREEDOM FOUNDATION seeks for its

membership to have full and equal access to "America's Main Street," Pennsylvania

Avenue on Inauguration Day, to express concerns over important issues such as war and

peace, civil and human rights and social justice. It seeks for its membership, a

significantly targeted community in the United States, to not be afraid or deterred from

expressing dissent in a display of traditional grassroots democracy by the government's

efforts to exclude persons who hold opposition viewpoints from the administration from

speaking out in visible fashion and concentrated assembly at the Inauguration.

18.     Plaintiff NATIONAL COUNCIL OF ARAB AMERICANS (NCA) is a national

membership and chapter-based association of individuals and organizations that seeks to

serve the Arab American community in various forms. Its services include need-based,

legal defense, educational, advocacy, and grassroots empowerment on the basis of full

constitutional belonging. The NCA is headquartered in the city of Davis, State of

California. Plaintiff NCA seeks for its membership to have full access as all people of the

United States, without discrimination, to participate in democracy and line the Inaugural

Parade route with the general public on a first come first serve basis, to bring signs and

their voices, and express support for social justice and civil rights for all, and against war,

occupation, and bigotry, as the administration passes on the parade route, and to stand

with tens of thousands of like-minded individuals from all different backgrounds and

communities.

19.     Defendant Gale Norton is the Secretary of the Interior.  One of the agencies within the

7

Department of the Interior is the National Parks Service ("NPS").    Defendant Fran

Mainella is the Director of the NPS. The NPS is the entity responsible for promulgation

and enforcement of lawful regulations for expressive activity on federal public fora.  The

Department of the Interior is also the federal entity designated by Congress to implement

the Presidential Inauguration Committee Act.

20.    Defendant W. Ralph Basham is the Director of the U.S. Secret Service. The Secret

Service is the entity responsible for promulgating direction that supports for signs and

placards be banned from the Inaugural Parade route.

### JURISDICTION AND VENUE

21.    This Court has jurisdiction to hear this complaint pursuant to 28 U.S.C. § 1331 (federal

question), 28 U.S.C. §1343(a)(3) and (4) (civil rights jurisdiction).

22.    Venue is appropriately vested in this Court pursuant to 28 U.S.C. §1391 because the acts

or omissions giving rise to the claims occur or will occur in the District of Columbia

### FACTS

23.     On January 2, 2004, the ANSWER Coalition filed a permit application with the National

Park Service for Inaugural related events, including for Freedom Plaza and other spaces

for the purposes of a rally and demonstration, and for the sidewalks of Pennsylvania

Avenue.

24.    It is ANSWER's intention, in seeking a permit for the sidewalks, to maintain those

sidewalks as open and accessible for the public, including political dissenters, without

discrimination on the basis of political affiliation or viewpoint. In other words, as

8

opposed to the rally sites, the sidewalks are not sought for an exclusive use and, in fact, are sought to be preserved for all.

25.   ANSWER's permit application was not denied within 24 hours and was consequently "deemed granted."

26.   As of January 20, 2004, there existed on the public board listing permit applications, an application submitted by the National Park Service *to itself* on behalf of the Presidential Inaugural Committee. The board listed the specific sites for which the NPS was seeking a permit from itself. Those sites did <u>not</u> include Freedom Plaza or the sidewalks of Pennsylvania Avenue, among other locations sought by ANSWER.

27.   The NPS permit was submitted in violation of the constitutionally mandated permitting regulations.

28.   The NPS, however, maintains that it does not have to abide by the permitting regulations where the Inaugural Committee is concerned.

29.   The NPS maintains that it is either authorized or compelled to deviate from the existing permitting regulations by effect of the Presidential Inaugural Ceremonies Act of 1956, as applied according to the NPS in <u>International Action Center, et al. v. United States, et al.</u>, Civil Action No. 01-0072 (GK).

30.   The existing NPS regulations explicitly provide for a set aside of space for the Inaugural Committee. That set aside is established by 36 C.F.R. § 7.96(g)(4)(F) which states as follows: "*Inaugural ceremonies.* The White House sidewalk and Lafayette Park, exclusive of the northeast quadrant, [are reserved] for the exclusive use of the Inaugural

Committee on Inauguration Day." Plaintiffs do not challenge this set aside for the

Inaugural Committee. They want the public fora, the sidewalks of Pennsylvania Avenue,

to be open to all without viewpoint selection or discrimination.

31.     The Lafayette Park set aside for the Inaugural Committee was justified, when

promulgated, on the basis that it was narrowly drawn because the other nearby park lands

remained available to demonstrators on Inauguration Day.

32.     A review of the legislative history of the Presidential Inaugural Ceremonies Act (PICA)

of 1956 establishes that the purpose of that act was strictly administrative convenience, to

transfer permitting authority from the Congress (which had to actually enact legislation to

permit the PIC to use space every four year) to the Secretary of the Interior. The PICA

does not authorize the NPS conduct challenged herein.

33.     Similarly, a review of the relevant regulatory history establishes that the NPS conduct

challenged herein is impermissible.

34.     Likewise, the applicable case law - particularly that from the Quaker Action and Women

Strike for Peace lines of cases, establish that the NPS conduct challenged herein is

impermissible.

35.     The NPS stated to ANSWER organizers that it could not disclose what space was

available to either ANSWER or the public until after the PIC had claimed all the spavce it

wanted upon the public sidewalks of Pennsylvania Avenue.

36.     As recently as December 20, 2004, the NPS was engaged in communication with

ANSWER organizers about their intended usage of Freedom Plaza. In a December 20,

2004 meeting, ANSWER organizers - - at the request of the NPS - - provided detailed

specifications about the configuration and intended use of Freedom Plaza by anti-war

demonstrators. Details as specific as size and height of press risers, speaker stands, stage,

sound, electrical generators, etc. were discussed.

37.  At the December 20, 2004 meeting, ANSWER representatives - - aware of the PIC's

erection of bleachers - - insisted that NPS officials at least state whether they believed

they had the discretion or authority to allow ANSWER to use Freedom Plaza as described

in detail. Attorney Randolph Myers refused to answer and also refused to deny

ANSWER's permit application, in whole or in part.

38.  On December 23, 2004, the NPS revoked ANSWER's permit and offered it space at John

Marshal Park, which for many reasons is inadequate to satisfy the needs of the ANSWER

Coalition to facilitate free speech activities along the parade route including for a mass

rally. John Marshall Park has only 210 feet abutting Pennsylvania Avenue. The NPS

denied ANSWER's permit request to preserve the sidewalks of Pennsylvania Avenue for

the public, including anti-war demonstrators, to line the parade route with expressive

messages. NPS also permitted to ANSWER a narrow strip of Freedom Plaza that has

about 5 feet of space abutting Pennsylvania Avenue, four spaces located *behind* the 10 -

14' tall PIC bleachers, one site that is over 100 feet from Pennsylvania Avenue, and one

other space that is literally behind a wall.

39.  At all points in the discussions between ANSWER and the NPS, the ANSWER

representatives have repeatedly demanded to know what space along the parade route

11

would be available for the public, including demonstrators, to assemble upon. The NPS will only state that they may assemble on any "open spaces" that are leftover after the PIC takes its space, but the NPS absolutely refuses to identify or provide a map or information as to what "open space" actually remains.

40.     NPS provided maps reflect that the PIC has over 5,600 linear feet of sidewalk space along the parade route (as compared to 215 linear feet alotted to ANSWER that abuts the parade route). PIC bleachers line over one mile of space along Pennsylvania Avenue, effectively eliminating the usefulness of any space behind those bleachers for expressive activity directed towards parade participants.

41.     Maps produced by the NPS in mid-December, in response to a Freedom of Information Request by ANSWER, reflect that for this Inauguration (unlike the 2001 Inauguration), the NPS will be creating exclusion zones for all space in front of PIC bleachers and encompassing space on the sides and around PIC bleachers. These exclusion zones encompass virtually all useful space on the public sidewalks.

42.     Access to these vast Pennsylvania Avenue exclusion zones is afforded on an invitation only basis. The NPS has delegated to the Inaugural Committee the authority to hand select who may enter upon these vast exclusion zones along the parade route.

43.     The only people that the NPS and law enforcement will allow to enter upon these exclusion zones - - that go all the way up to the curb - - are those who have been pre-approved and screened by the Inaugural Committee and who have supported the PIC with a payment for the ticket. The government may not condition access to the public

12

sidewalks of Pennsylvania Avenue on giving money to a private political group or on being pre-approved based on a political association with that group. This is classic viewpoint discrimination.

44.    At the 2001 Inaugural, according to PIC documents, not a single ticket was distributed to the general public. Not one. The only persons who could get tickets were persons on the PIC's internal "A" list or "B" list. The "C" list was the general public, not one of whom was allowed a ticket.

45.    The 2005 PIC this year has again implemented the same discriminatory system of access that the 2001 PIC used.

46.    The PIC has announced to the public that tickets to the parade are available from their ticket hotline. Ticketmaster distributes and sells these tickets. However, Ticketmaster will only sell a person a ticket if that person can present an "invitation number" issued by the PIC. Ticketmaster refuses to sell these tickets to the public. There is no way for a member of the public to call the PIC and get an invitation number. They are reserved for those hand-selected by the PIC.

47.    At the 2001 Inauguration, not only did the PIC have an exclusive bleacher policy - - the government actually enforced exclusion of the public from the bleachers *even though many bleacher sections were entirely empty due to inclement weather and no-shows.*

48.    It is constitutionally impermissible for the NPS to maintain the discretion, or delegate the discretion, to restrict free speech activities along the parade route to those who support the administration or have a political affiliation or financial transaction with the Bush-

13

Cheney PIC.

49.   The maps and representations of the NPS convey that the 2005 Inauguration will be, literally, exclusive to all but the hand selected. Whatever minimal space is allowed to the public and to dissenters, there is no opportunity for there to be a mass manifestation along the parade route - - except for the uniform support of the PIC selectees.

50.   Ordinary persons who wish, for example, to bring their children to participate in this important ceremonial event will be denied access because they have not been selected by the favored political group.

51.   Others who wish to line the parade route with political expressions of dissent will be penned in and excluded from access to nearly all of the parade route.

52.   This is viewpoint based discrimination that is intended to create the appearance of uniform support for the administration's policies. By excluding all those, except those pre-approved by the PIC, from nearly all of the spaces on Pennsylvania Avenue with an unobstrcuted line of sight to the parade, the NPS has engaged in impermissible and unconstitutional discrimination that is intended to stage manage the free expression along the parade route, and to ensure that dissenters cannot manifest a presence along the length of the route as they did in 2001.

53.   Rendering matters even more aggravated is a new policy asserted by the government, that no person may hold a placard on a sign support (as picket signs traditionally are displayed so they can, in fact, be seen). This restriction has no basis in genuine security interests and encompasses items such as hollow cardboard supports that have no offensive or

14

defensive value as potential weapons. Of course, the PIC selectees don't need sign

supports because every single PIC space is on a bleacher, literally elevated, with a direct

and unobstructed line of site to the participants in the parade.

54.     Given that the public and dissenters are to be relegated primarily to locations behind the

towering bleachers, there is no opportunity for their voices to be heard or their placards to

be visible. Those who have been vetted for political association with the PIC, however,

have no such restraints on their expressive activity.

## COUNT I
### (Permitting Violations)
**First Amendment Freedom of Speech and Assembly; Right to Petition Government for Redress of Grievances; Equal Protection Clause**

55.     Paragraphs 1 through 54 are incorporated by reference herein.

56.     The conduct complained of herein deprives plaintiff and other members of the public of

their constitutional rights pursuant to the First Amendment to assemble in public places

and communicate their views to other members of the public, to present grievances to

government officials, and to equal protection under the law.

57.     The NPS action, in excluding the public and anti-war demonstrators from vast sections of

the Inaugural Parade route is not a reasonable time, place or manner regulation.

58.     The NPS action is viewpoint-based and content-based, favoring those approved by the

Bush-Cheney Inaugural Committee, and disfavoring those who are not so approved,

especially those who wish to express their opposition to the present administration's

policies at this unique quadrennial political moment.

15

59.    The NPS action does not serve *any* significant government interest, let alone a compelling

interest, by the broad exclusion of expressive activity along the parade route.  It is not

narrowly tailored nor appropriately limited in discretion as it flies in the face of the NPS'

own regulations and was made without any standards or guidelines to fetter its discretion

to allot public space on the sidewalks along the Inaugural Parade. The NPS action also

fails to leave open ample alternatives for communication by those who are excluded from

the vast area reserved for the Inaugural Committee's supporters.

60.    There is no constitutional basis to distinguish between those who have been pre-approved

by a private political body to have expansive access to the parade route, while banning all

others who lack such favored and privileged status from even assembling on Pennsylvania

Avenue with an opportunity to have an unobstructed line of sight to parade participants.

61.    Plaintiffs will suffer irreparable harm by the denial and abridgment of their free speech

rights, as individuals and as groups, to line the parade route and engage in free speech and

petition activities.

## COUNT II

### (Prohibition on Sign Supports)

### First Amendment Freedom of Speech and Assembly; Right to Petition Government for Redress of Grievances; Equal Protection Clause

62.    Paragraphs 1 through 61 are incorporated by reference herein.

63.    The conduct complained of herein deprives plaintiff and other members of the public of

their constitutional rights pursuant to the First Amendment to assemble in public places

and communicate their views to other members of the public, to present grievances to

16

government officials, and to equal protection under the law.

64.    There is no legitimate basis for the prohibition on all sign supports, including those

supports that are made of hollow cardboard and can be inspected at the checkpoints,

particularly where these restrictions are not even required for demonstrations on the

White House sidewalks - - which are the location that has had the strictest restrictions on

demonstration activity due to its proximity to the White House.

65.    The ban on sign supports will disproportionately burden those who are not privileged to

have been pre-approved by the PIC for bleacher seating and, in fact, is a mere cover for

viewpoint based discrimination that favors pre-approved administration supporters and

burdens all others. The PIC approved attendees don't require sign supports because they

are physically elevated by an enormous bleacher supports made of wood, metal and

piping (elements which have a greater offensive value than hollow cardboard sign

supports).

66.    Plaintiffs will suffer irreparable harm by the denial and abridgment of their free speech

rights, as individuals and as groups, to line the parade route with signs elevated on pickets

and engage in free speech and petition activities.

### Count III
### Injunctive Relief for Violation of First Amendment and Equal Protection Clause

67.    Paragraphs 1 through 66 are incorporated by reference herein.

68.    There is no substitute day for the intended expressive activity.  The plaintiffs are not

seeking to secure access to the swearing-in ceremony on U.S. Capitol grounds. They are

17

not seeking access to the spaces set aside by regulation for the exclusive use of the Inaugural Committee, on the sidewalks of the White House and in three-quarters of Lafayette Park. They are not seeking access to the many private balls and fundraisers at which the President will appear. All the people have is the sidewalks. That is all they seek access to.

69.     The intended expressive activity of the demonstrators is to *collectively line the parade route* with their signs, their bodies and to amplify their presence with their collective voices. The exclusion of the public from vast portions of Pennsylvania Avenue that has been reserved for the favored Inaugural Committee prevents that mass expression.

70.     There is no adequate substitute for allowing the public, including demonstrators, to line the parade route for the purpose of political expression. The granting to ANSWER of permission to use John Marshall park, with its 210 linear feet of access to the parade route, is not close to an adequate substitute for equal access to line the parade route by the demonstrating public. It simply does not remedy the problem, to provide demonstrators with a sliver of their rights or a sliver of access to the route.

71.     The problem, and the constitutional dispute, does not arise as a matter of law strictly from the inadequacy of the space permitted to ANSWER. It arises from the exclusion of all but the privileged and selected, from large portions of the parade route.

72.     In the instant case, plaintiffs have already suffered irreparable harm in their ability to organize and plan for their intended demonstration. The uncertainty created by the NPS practice of denying permits at the very last moment, notwithstanding long-standing knowledge and intention to do so, is terribly disruptive.

18

73.     Without an injunction issued by this Court ordering greater access for the public to the

parade route, Plaintiffs and the public interest will suffer even greater irreparable harm.

WHEREFORE, Plaintiffs request the following relief:

a.      Declaratory judgment that actions of the NPS and Secret Service were in violation

of the U.S. Constitution;

b.      Injunctive relief prohibiting NPS from revoking the ANSWER permit, including

specifically for use and access of Freedom Plaza;

c.      With respect to the sidewalks of Pennsylvania Avenue, plaintiffs seek the

following relief in the alternative:

i.      *Alternative 1* - That the Court enjoin NPS from revoking ANSWER's

permit, with ANSWER leaving the permitted sidewalk areas as open to the

public without discrimination based on political association or belief or

expression, or

ii.     *Alternative II* - That the Court enjoin NPS from revoking ANSWER's

permit with respect to Freedom Plaza and other assembly sites requested,

and permanently enjoin the NPS from issuing an exclusive-use permit to

anyone or any group for the sidewalks of Pennsylvania Avenue on

Inauguration Day.

d.      Injunctive relief enjoining the enforcement of the ban on sign supports;

e.      An award of plaintiff's reasonable attorneys' fees, costs and expenses; and

f.      Such other and further relief, including all appropriate equitable relief, as to the

Court may seem proper.

19

January 14, 2005

Respectfully submitted,


Carl Messineo (#450033)
Mara Verheyden-Hilliard (#450031)
Merrilyn Onisko[1]

PARTNERSHIP FOR CIVIL JUSTICE, INC.
1901 Pennsylvania Ave., NW, Suite 607
Washington, D.C. 20006
(202) 530-5630


Carol A. Sobel
LAW OFFICES OF CAROL A. SOBEL
429 Santa Monica Blvd, Ste. 550
Santa Monica, California 90401
(310) 393-3055

All attorneys also on behalf of the
NATIONAL LAWYERS GUILD
MASS DEFENSE COMMITTEE

---

[1] Admitted to the U.S. District Court for the District of Columbia, to the U.S. District Court for the Eastern District of Michigan, and in the State of Michigan; Application pending for District of Columbia.