UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
A.N.S.W.E.R. COALITION,                  )
                                        )
          Plaintiff,                     )
                                        )
     v.                                  )          Civil Action No. 05-0071 (PLF)
                                        )
                                        )
DIRK KEMPTHORNE,                         )
     SECRETARY OF THE INTERIOR, et al.,[1]  )
                                        )
          Defendants.                    )
_____)


OPINION
===

          Plaintiff A.N.S.W.E.R. (Act Now to Stop War and End Racism) Coalition

("ANSWER") filed this lawsuit against defendants Dirk Kempthorne, Secretary of the Interior,

Fran P. Mainella, Director of the National Park Service ("NPS"), and Mark Sullivan, Director of

the United States Secret Service, seeking declaratory and injunctive relief on three claims, all

alleging violations of the First Amendment and the Equal Protection Clause of the United States

Constitution with respect to policies and regulations relating to the Presidential Inaugural Parade

in January 2005.[2]  This matter is now before the Court on defendants' motion to dismiss or, in

_____

          [1]     Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, Secretary Dirk
Kempthorne has been substituted for former Interior Secretary Gale Norton and Secret Service
Director Mark Sullivan has been substituted for former Director W. Ralph Basham.

          [2]     Additional plaintiffs Graylan S. Hagler, the Muslim American Society Freedom
Foundation and the National Council of Arab Americans were named in the original complaint
filed in this lawsuit.  When the operative amended complaint was filed on July 28, 2005,
ANSWER Coalition was the only plaintiff named.

the alternative, for summary judgment and plaintiff's motion for partial summary judgment.[3]

# I.  BACKGROUND

The 2005 Inauguration of President George W. Bush took place on January 20, 2005 here in Washington, D.C.  The inaugural parade route included, as it always does, Pennsylvania Avenue between the United States Capitol and the White House.  Since 1996, much of the Pennsylvania Avenue corridor has been part of the Pennsylvania Avenue National Historic Park.  It therefore is under the jurisdiction of the National Park Service, which is authorized to promulgate rules and regulations "for the use and management of parks[.]"  16 U.S.C. § 3.  NPS issues regulations with respect to the presidential inaugural ceremonies and permits relating thereto.  See generally 36 C.F.R. § 7.96(g).  The Presidential Inaugural Ceremonies Act ("PICA"), 36 U.S.C. § 501 et seq., which was enacted in 1956, also governs inaugural events.

Plaintiff purports to represent "tens of thousands of political dissenters, anti-war activists and ordinary people compelled to collective action, among other reasons, by the war policies of the Bush administration and its refusal to bring troops home now from Iraq."  Am. Compl. at 3-4.  Plaintiff asserts that it has "concrete intentions to demonstrate at the upcoming

---

[3]    The papers submitted in connection with these motions include: Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment ("Defs' Mot."); Memorandum in Support of Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment ("Defs' Mem."); Plaintiff's Opposition to Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment and Cross Motion for Judgment on the Pleadings or, in the alternative, for Summary Judgment ("Pl's Mot."); Defendants' Opposition to Plaintiff's Cross Motion for Summary Judgment and Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment ("Defs' Opp."); and Reply in Support of Plaintiff's Cross Motion for Summary Judgment ("Pl's Reply").

Presidential Inauguration" regardless of which party's candidate is elected, and that it advances this litigation to "vindicate the rights of all to equal access to the public parade portion of the Inaugural ceremony." Id. at 4.

Plaintiff alleges that it is the strict policy of the NPS not to accept any permit applications submitted more than one year in advance of the start date for any event on Park Services land, see Am. Compl. ¶ 9, and that this policy is used to reject permit applications of organizations, "including groups engaged in political dissent." Id. Plaintiff alleges that the policy is waived or disregarded for the Presidential Inaugural Committee, which effectively is permitted to submit its application earlier than other groups and is given exclusive use of most of the parade route. See id. at 4 and ¶¶ 16, 29, 32, 33. On January 2, 2004, ANSWER filed a permit application with the NPS for 2005 Inauguration events and setup, covering a time period from January 1, 2005 to January 20, 2005. See id. ¶¶ 10-11; see also Defendants' Statement of Material Facts as to Which There is No Genuine Issue ("DSMF") ¶ 12. ANSWER's application "was not denied within 24 hours and was consequently 'deemed granted' pursuant to regulation." Am. Compl. ¶ 14.[4]

Plaintiff alleges that on November 12, 2003 and December 19, 2003, NPS submitted permit applications to itself in connection with the 2005 Inauguration, "outside the one year period and in violation of the generally applicable permitting regulations and policies." Am.

---

[4]      36 C.F.R. § 7.96(g)(3) provides that "[a]ll demonstration applications . . . are deemed granted, subject to all limitations and restrictions applicable to said park area, unless denied within 24 hours of receipt."

Compl. ¶ 29.[5]  Defendants respond that NPS "has traditionally submitted applications on behalf of PIC [the Presidential Inaugural Committee] because no committee is formed until after a presidential election has been decided."  DSMF ¶ 4.  The PICA specifically authorizes the Secretary of the Interior to "grant to the Inaugural Committee a permit to use [any of the Federal] reservations or grounds during the inaugural period, including a reasonable time before and after the inaugural period."  36 U.S.C. § 503(a).

By January 20, 2004, plaintiff alleges, the applications submitted by NPS to itself were visible on the public boards maintained by NPS and on which applicants "can observe whether there are conflicting prior-in-time permit applications for any particular or desired space." Am. Compl. ¶¶ 15-16.  The November 12, 2003 NPS application was "for the entire length of the Pennsylvania Avenue sidewalks (plus additional areas) for the six-month period from November 1, 2004 to April 1, 2005."  Id. ¶ 32; see also DSMF ¶ 2.   Plaintiff argues that the December 19, 2003 NPS application was "not limited in scope" and "encompassed the period of December 19, 2004 through March 15, 2005." Am. Compl. ¶ 33.  These permits, submitted on behalf of the Presidential Inaugural Committee ("PIC"), reserved some areas for the exclusive use of the PIC and its guests.  See id. ¶¶ 47-54; see also DSMF ¶¶ 1, 6.  As of January 20, 2004, the sites designated did not include Freedom Plaza or the sidewalks of Pennsylvania Avenue, "among other locations encompassed by the ANSWER permit."  Am. Compl. ¶ 16.

ANSWER alleges that it made repeated requests of NPS to identify what, if any, part of its permit would be revoked, but received no response.  See Am Compl. ¶¶ 17-18.

---

[5]      The amended complaint states that the dates were November 12, 2004 and December 19, 2004, but the Court concludes that plaintiff intended to say "2003."  See Am. Compl. ¶¶ 35-36 (referring to the November 12, 2003 permit application).

ANSWER then requested "that the NPS convene a logistics meeting for their intended activities along the Inaugural Parade route" and "was advised that NPS would not provide information nor schedule the normal pre-determination multi-agency logistics meeting with protest organizers until after the Bush-Cheney PIC had determined what space it intended to take along the route . . ." Id. ¶ 22; see also id. ¶ 26.  The meeting finally was held on December 13, 2004, with representatives of the NPS, the United States Park Police and the Secret Service.  See id. ¶ 24. ANSWER alleges that it was advised at the meeting that NPS was meeting and talking with the Bush-Cheney PIC and that "only based on those discussions would they be able to determine the status of the ANSWER Coalition's permit . . . ." Id. ¶ 26.  There was a second logistics meeting on December 20, 2004.  See id. ¶¶ 38-39.

Plaintiff alleges that on December 23, 2004, NPS "revoke[d] ANSWER's permit" and offered ANSWER much more limited space for its use than it had requested in its January 2004 permit application.  See Am. Compl. ¶¶ 44-46.[6]  Defendants characterize this determination

---

[6]      According to plaintiff:

44.  The NPS offered ANSWER space to gather at John Marshall Park which afforded a mere 210 feet abutting Pennsylvania Avenue (as compared to the PIC's 5600+ feet of access to the parade); revoked ANSWER's permit insofar as it preserved the sidewalks of Pennsylvania Avenue for access by the public, including anti-war demonstrators, to line the parade route with expressive activity; and revoked ANSWER's permit for Freedom Plaza with the exception of five feet of space abutting Pennsylvania Avenue and other spaces located *behind* the towering PIC bleachers; allowed dissenters one site that was over 100 feet away from Pennsylvania Avenue and one other space that was literally behind a wall; and allowed dissenters to assemble in a total of four additional spaces that were also located behind the 10' to 14' tall PIC bleachers.

as the Park Service "grant[ing] in part the plaintiff's permit application."  DSMF  ¶ 13.

Defendants also claim that "[t]he nine park areas for plaintiff's permits were sufficient to fully

accommodate the requested numbers of participants for their demonstration activities and in

many areas allowed the plaintiff's group to see and be seen from the parade route."  Id.

Plaintiff filed this lawsuit on January 14, 2005, seeking an expedited preliminary

injunction against the National Park Service and the United States Secret Service "to preclude

denial of access to the 2005 Inaugural Parade Route."  Complaint at 1.  A hearing on the motion

for preliminary injunction was held before the undersigned on January 18, 2005.  At the

conclusion of the hearing, the Court denied the motion, explaining its reasons in an oral opinion.

See January 18, 2005 Order; Transcript of Excerpt of January 18, 2005 Preliminary Injunction

Hearing ("PI Transcript").   ANSWER filed an amended complaint for declaratory and injunctive

relief on July 28, 2005.  The parties subsequently briefed the motions that are now before the

Court.

Plaintiff states that it "advance[s] this litigation to vindicate the rights of all to

equal access to the public parade portion of the Inaugural ceremony," and that it does not "seek

to disturb the existing and exclusive system of access to the inaugural ceremony on the U.S.

---

45.  NPS-produced maps reflect that the PIC had over 5,600 linear feet of sidewalk space along the parade route (as compared to the 215 linear feet allotted to the tens of thousands of dissenters assembling under the umbrella of ANSWER's permit).

46.  Tall PIC bleachers lined over one mile of space along Pennsylvania Avenue, effectively eliminating the usefulness of any space behind those bleachers for expressive activity directed at parade participants.

Am. Compl. ¶¶ 44-46.

Capitol grounds or to Lafayette Park[.]" Am. Compl. at 4. Rather, it seeks "injunctive relief prohibiting NPS from this repeated course of constitutional deprivation[,]" and "a declaratory judgment that their constitutional rights were violated by the defendants in connection with the 2005 Inaugural demonstrations." Id.[7]

Count I of the amended complaint alleges "unconstitutional permitting violations" under the First Amendment and the Equal Protection Clause. See Am. Compl. ¶¶ 87-97. More specifically, plaintiff asserts that "it is constitutionally impermissible for NPS to exempt itself or the PIC from the constitutionally mandated permitting system, particularly where such deviation works an abridgement of others' free speech, petition and assembly rights." Id. ¶ 89. Plaintiff also asserts that the "NPS action, in excluding the public and anti-war demonstrators from vast sections of the Inaugural Parade route is not a reasonable time, place or manner regulation[,]" and that the "NPS actions and policies constitute viewpoint-based and content-based discrimination, favoring those approved by the administration's Inaugural Committee and disfavoring those who are not so approved, especially those who wish to express their opposition to the current administration's policies at this unique quadrennial political moment through mass assembly and visible protest." Id. ¶¶ 90-91.

Count II alleges that the prohibition on sign supports also violates the First Amendment and the Equal Protection Clause. See Am. Compl. ¶¶ 98-102.

Finally, Count III requests injunctive relief for the violation of plaintiff's First Amendment and Equal Protection Clause rights, seeking "equal access for the public and

---

[7]     The complaint also includes allegations about the imposition of specific "arbitrary last minute conditions on the ANSWER COALITION" imposed by NPS in 2005. Am. Compl. ¶ 70.

dissenters to the parade route." Am. Compl. ¶ 108.[8]  Plaintiff requests that no one, including the

PIC, be given exclusive access to the parade route on Inauguration Day, but rather that all of the

_____

[8]      Plaintiff requests the following relief in its amended complaint:

a.  Declaratory judgment that the NPS policy and practice of exempting itself and/or the PIC from strict compliance with the generally applicable permitting regulations is unconstitutional; and an injunction prohibiting any such deviation in the future;

b.  Declaratory judgment that the NPS policy and practice of granting to the PIC exclusive use of the public space abutting the Inaugural Parade route is unconstitutional; an injunction prohibiting such discriminatory conduct in the future; and a mandatory injunction that the NPS make the sidewalks abutting the Inaugural Parade generally open to the public for use, with accommodations for reasonable logistical needs and to afford access by the disabled where such reasonable accommodations neither favor nor burden any group on the basis of political association or viewpoint, and to also allow the continued traditional use of the sidewalk in front of the Wilson Building for a reviewing stand for District of Columbia officials and invitees consistent in size with that used in 2005;

c.  Declaratory judgment that the prohibition on supports for signs and placards is unconstitutional, and a mandatory injunction that the NPS and/or Secret Service promulgate constitutionally permissible regulations regarding use of such supports if they have a constitutional basis for regulating such items;

d.  Declaratory judgment that plaintiffs suffered a violation of their constitutional rights in connection with the 2005 Inauguration restrictions;

e.  An award of plaintiff's reasonable attorneys' fees, costs and expenses; and

f.  Such other and further relief, including all appropriate equitable relief, as to the Court may seem proper.

Am. Compl. at 27.

8

public be able to mingle freely throughout the parade route.  See id. ¶¶ 104, 106.[9]

In their motion to dismiss, defendants first argue that plaintiff's claims are moot, because the 2005 Inauguration is "long since passed."  Defs' Mem. at 1.  Defendants also argue that ANSWER lacks standing, both to represent all of the general public and to complain about the permits issued.  See id. at 1-2.  In the alternative, defendants seek summary judgment on the merits because, they argue, plaintiff was afforded adequate space and NPS did not violate its regulations or policies, or the PICA.  See id. at 3.  Defendants further maintain that the ban on sign supports "were not directed at any First Amendment activity but were imposed solely for the safety and security of those participating in, and attending, the Inauguration."  Id. at 4.  Plaintiff's cross motion for partial summary judgment is "on the claim that it is a constitutional violation for the NPS to deviate from the regular permitting system and established policies in order to grant preferential treatment to a favored group, the Presidential Inaugural Committee, in the permitting of spectator space along the Inaugural Parade Route."  Pl's Mot. at 54.

---

[9]      ANSWER does not "seek to disturb the existing and exclusive system of access to the inaugural ceremony on the U.S. Capitol grounds or to Lafayette Park[.]"  Am. Compl. at 4; see also Pl's Mot. at 15; Pl's Reply at 10.

> The plaintiffs are not seeking to secure access to the swearing-in ceremony on U.S. Capitol grounds. They are not seeking access to the spaces set aside by regulation for the exclusive use of the Inaugural Committee, on the sidewalks of the White House and in three-quarters of Lafayette Park. They are not seeking access to the many private balls and fundraisers at which the President will appear. All the people have is the sidewalks and public parkland. That is what plaintiffs seek, to allow all members of the public to line the Inaugural Parade route on a first-come first-served basis without suffering political discrimination.

Am. Compl. ¶ 104.

The threshold questions that must be resolved before addressing the parties'
claims on the merits are whether plaintiff has standing to sue (and on whose behalf) and whether
the claims are moot because the 2005 Inauguration already has taken place.  For the reasons that
follow, the Court concludes that plaintiff has standing – though it is more limited than the
requests for relief made by plaintiff – and that only one of plaintiff's four primary requests for
relief is moot.  A status conference will be scheduled to determine how to proceed with respect to
the merits of plaintiff's surviving claims and requests for relief.

## II.  MOTION TO DISMISS STANDARD

"Three inter-related judicial doctrines – standing, mootness, and ripeness – ensure
that federal courts assert jurisdiction only over 'Cases' and 'Controversies.'  U.S. Const. art. III
§ 2."  Worth v. Jackson, 451 F.3d 854, 855 (D.C. Cir. 2006).  "A federal court is constitutionally
forbidden to render advisory opinions or 'to decide questions that cannot affect the rights of
litigants in the case before [the Court].'"  Better Government Ass'n v. Department of State, 780
F.2d 86, 90-91 (D.C. Cir. 1986) (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)).
Federal courts are courts of limited jurisdiction, with the ability to hear only cases entrusted to
them by a grant of power contained in either the Constitution or in an act of Congress.  See, e.g.,
Beethoven.com LLC v. Librarian of Congress, 394 F.3d 939, 945 (D.C. Cir. 2005); Hunter v.
District of Columbia, 384 F. Supp. 2d 257, 259 (D.D.C. 2005).  A federal court has no subject
matter jurisdiction where the plaintiff lacks standing, or where the case is not justiciable because
it is either moot or not yet ripe.  See Worth v. Jackson, 451 F.3d at 857.  On a motion to dismiss
for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing that the court

has jurisdiction.  See Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp. 2d 68,

72 (D.D.C. 2004).

In considering whether to dismiss a complaint for lack of subject matter

jurisdiction, the Court must accept all of the factual allegations in the complaint as true, but may

in appropriate cases consider certain materials outside the pleadings.  See Jerome Stevens

Pharms., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005).  "[W]here necessary, the court

may consider the complaint supplemented by undisputed facts evidenced in the record, or the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

Herbert v. National Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).  While the

complaint is to be construed liberally, the Court need not accept factual inferences drawn by

plaintiff if those inferences are not supported by facts alleged in the complaint, nor must the

Court accept plaintiff's legal conclusions.  See Primax Recoveries, Inc. v. Lee, 260 F. Supp.2d

43, 47 (D.D.C. 2003).

## III.  DISCUSSION

### A.  Standing

Standing is a requirement under which plaintiffs must show, at an "irreducible

constitutional minimum": (1) that they have suffered an injury in fact – the invasion of a legally

protected interest; (2) that the injury is fairly traceable to the defendant's conduct (a causal

connection); and (3) that a favorable decision on the merits likely will redress the injury.  See

Friends of the Earth v. Laidlaw, 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of

Wildlife, 504 U.S. 555, 560-61 (1992)); Worth v. Jackson, 451 F.3d at 858; Gettman v. DEA,

11

290 F.3d 430, 433 (D.C. Cir. 2002). The alleged injury in fact must be concrete and particularized and actual or imminent, not conjectural, hypothetical or speculative. See Friends of the Earth v. Laidlaw, 528 U.S. at 180-81; Lujan v. Defenders of Wildlife, 504 U.S. at 560-61; Worth v. Jackson, 451 F.3d at 858; Sierra Club v. EPA, 292 F.3d 895, 898 (D.C. Cir. 2002). If plaintiff cannot meet all three prongs of this test, the Court must dismiss the suit for lack of standing.

"An organizational plaintiff . . . may have standing to sue on its own behalf 'to vindicate whatever rights and immunities the association itself may enjoy. . . .'" Common Cause v. Federal Election Commission, 108 F.3d 413, 417 (D.C. Cir. 1997) (quoting Warth v. Seldin, 422 U.S. 490, 511 (1975)). To sue on its own behalf, however, an organization "must demonstrate that the organization has suffered injury in fact, including such concrete and demonstrable injury to the organization's activities – with [a] consequent drain on the organization's resources – constituting . . . more than simply a setback to the organization's abstract social interests." National Taxpayers Union, Inc. v. United States, 68 F.3d 1428, 1433 (D.C. Cir. 1995) (quotations and citations omitted).[10]

An association may also have "standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v.

---

[10]     Individuals, of course, also may have standing in particular cases. To have individual standing, "[t]he plaintiff must show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." Elk Grove Unified School District v. Newdow, 542 U.S. 1, 11-12 (2004).

Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977).  This is so-called

"representational standing."  National Ass'n of Clean Air Agencies v. Environmental Protection

Agency, – F.3d –, 2007 WL 1574609, at * 4 (D.C. Cir. June 1, 2007); Center for Law and

Education v. Dep't of Education, 396 F.3d 1152, 1159 n. 1 (D.C. Cir. 2005).

       Defendants argue that plaintiff lacks Article III standing to represent all members

of the general public.  See Defs' Mem. at 19-23.  Plaintiff responds that it does not claim to have

standing to represent the general public.  See Pl's Mem. at 39.  Rather, plaintiff argues,

"ANSWER's interests lie both in securing space for use as a rally and assembly site(s) and to

ensure that ANSWER and those affiliated with ANSWER or who support its political message

have the ability to line the parade route with a mass demonstration of collective action."  Id.

at 39-40 (quoting Am. Compl. at 20-21).  Plaintiff ANSWER argues that it has both "direct"

(organizational) standing and "third-party" (representational) standing on behalf of those who

would "organize under its banner and through its facilitation."  Pl's Reply at 11.

## *B.  Mootness*

       As the D.C. Circuit has succinctly explained:  "By constitutional design, a federal

court is authorized only to adjudicate "actual, ongoing controversies," and thus may not "give

opinions upon moot questions or abstract propositions, or . . . declare principles or rules of law

which cannot affect the matter in issue in the case before it."  Beethoven.com LLC v. Librarian

of Congress, 394 F.3d at 950 (internal citations omitted).  Thus, "[i]f events outrun the

controversy such that the court can grant no meaningful relief, the case must be dismissed as

moot."  McBryde v. Comm. to Review, 264 F.3d 52, 55 (D.C. Cir. 2001); see also Safe Energy

Coalition of Michigan v. Nuclear Regulatory Comm'n, 866 F.2d 1473, 1476 (D.C. Cir. 1989).

Similarly, the Eleventh Circuit has noted that "[p]ast injury from alleged unconstitutional

conduct does not in itself show a present case or controversy regarding injunctive relief, if

unaccompanied by current adverse effects."  Bourgeois v. Peters, 387 F.3d 1303, 1308 (11th Cir.

2004).  The requirement that a case not be moot "applies independently to each form of relief

sought[.]" McBryde v. Comm. to Review, 264 F.3d at 55 (citing Friends of the Earth v. Laidlaw,

528 U.S. at 185).

Defendants argue that plaintiff's claims are moot because the 2005 Inauguration is

long since over.  See Defs' Mem. at 15-18.  Plaintiff responds that this case falls within a

recognized exception to the doctrine of mootness – claims that are "capable of repetition, yet

evading review" are not moot.  See Pl's Mem. at 11-13.  The "capable of repetition, yet evading

review" exception was first recognized by the Supreme Court nearly a century ago in Southern

Pacific Terminal Co. v. ICC, 219 U.S. 498, 515 (1911).  As the D.C. Circuit has succinctly

explained:

> In order to invoke this exception . . . [plaintiff] must demonstrate
> that "(1) the challenged action [is] in its duration too short to be
> fully litigated prior to its cessation or expiration, and  (2) there [is]
> a reasonable expectation that the same complaining party [will] be
> subjected to the same action again." Weinstein v. Bradford, 423
> U.S. 147, 149 (1975) (per curiam).

Beethoven.com LLC v. Librarian of Congress, 394 F.3d at 950 (last two alterations in original);

see also Murphy v. Hunt, 455 U.S. 478, 482 (1982); First National Bank of Boston v. Bellotti,

435 U.S. 765, 774-75 (1978); Christian Knights of the Ku Klux Klan Invisible Empire, Inc. v.

District of Columbia, 972 F.2d 365, 370-71 (D.C. Cir. 1992); Washington Post v. Robinson, 935

F.2d 282, 286 (D.C. Cir. 1991).  The burden is on the complaining party to show that these requirements are met.  See Southern Company Services v. FERC, 416 F.3d 39, 44 (D.C. Cir. 2005).

With respect to the first prong of this test, both the Supreme Court and the D.C. Circuit have held that "orders of less than two years duration ordinarily evade review." Beethoven.com LLC v. Librarian of Congress, 394 F.3d at 951 (citing Southern Pacific Terminal Co. v. ICC, 219 U.S. at 514-16) (internal quotations and other citations omitted); see also Burlington Northern Railroad Co. v. Surface Transportation Board, 73 F.3d 685, 690 (D.C. Cir. 1996).  As a quick review of litigation surrounding the past several Presidential Inaugurations will confirm, orders relating to inaugural events do ordinarily evade full review.  See Mahoney v. Babbitt, Civil Action No. 96-2827 (D.D.C. 1996) and 105 F.3d 1452 (D.C. Cir. 1997) (emergency preliminary injunction litigation regarding the 1997 Inauguration); International Action Center v. United States, Civil Action No. 01-0072 (D.D.C. 2001) (emergency preliminary injunction litigation regarding the 2001 Inauguration).  With respect to the second prong, "[c]ourts have "interpreted 'same action' to refer to particular agency policies, regulations, guidelines, or recurrent identical agency actions." Beethoven.com LLC v. Librarian of Congress, 394 F.3d at 951 (citing Public Utilities Comm'n of Cal. v. FERC, 236 F.3d 708, 714-15 (D.C. Cir. 2001)).

## C.  Analysis

With these principles in mind, the Court will turn to each of plaintiff's specific claims and requests for relief to determine whether plaintiff has standing to sue (and on whose

behalf) and whether a justiciable case or controversy exists.  As the D.C. Circuit recently has

noted, the "Supreme Court has made clear that when considering whether a plaintiff has Article

III standing, a federal court must assume *arguendo* the merits of [plaintiff's] legal claim."  Parker

v. District of Columbia, 478 F.3d 370, 377 (D.C. Cir. 2007).  "Indeed, in reviewing the standing

question, the court must be careful not to decide the questions on the merits for or against the

plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their

claims."  Id. (quoting and citing Waukesha v. E.P.A., 320 F.3d 228, 235 (D.C. Cir. 2003))

(internal quotations omitted).

        Plaintiff's first request for relief, related to Count I of the amended complaint, is

for a "[d]eclaratory judgment that the NPS policy and practice of exempting itself and/or the PIC

from strict compliance with the generally applicable permitting regulations is unconstitutional"

under the First Amendment and the Equal Protection Clause, and "an injunction prohibiting any

such deviation in the future[.]"  Am. Compl. at 27.[11]  With respect to standing, the ANSWER

Coalition has organizational standing to litigate claims with respect to denials of permit

applications that the organization itself has submitted or will submit.  If a plaintiff is an object of

the action at issue, "there is ordinarily little question that the action or inaction has caused him

injury, and that a judgment preventing or requiring the action will redress it."  Lujan v. Defenders

of Wildlife, 504 U.S. at 561-62.  Furthermore, the courts "have consistently treated a license or

permit denial pursuant to a state or federal administrative scheme as an Article III injury."  Parker

v. District of Columbia, 478 F.3d at 376.

---

[11]     It is on this claim that plaintiff has cross-moved for partial summary judgment.
See Pl's Mot. at 54.

Taking the allegations in the amended complaint as true, the Court concludes that ANSWER Coalition and its members suffered an injury in fact – the invasion of a legally protected interest, in this case their asserted First Amendment rights; that the injury is fairly traceable to the defendant's conduct (a causal connection); and that a favorable decision on the merits likely will redress the injury.  See Lujan v. Defenders of Wildlife, 504 U.S. at 560-61; Worth v. Jackson, 451 F.3d at 858.  Causality and redressability cannot be contested; NPS controls the permitting process, and thus cause plaintiff's asserted injury, and after a declaration favorable to plaintiff from this Court, NPS would redress that injury in the future.  Specifically with respect to the injury prong, the Court concludes that ANSWER has "allege[d] facts showing that [it is itself] adversely affected" by the challenged practices of the defendants.  Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 473 (1982); see also Christian Knights of the Ku Klux Klan Invisible Empire, Inc. v. District of Columbia, 972 F.2d at 371.

While "'some day' intentions – without any description of concrete plans, or indeed any specification of *when* the some day will be – do not support a finding of . . . 'actual or imminent' injury," Lujan v. Defenders of Wildlife, 504 U.S. at 564 (emphasis in original),  the plaintiff in this case *does* have concrete plans to demonstrate *on a specific date;* January 20, 2009.  See Affidavit of Brian Becker ¶ 10, Exh. 6 to Pl's Mot.  Plaintiff alleges both that it suffered an injury in fact in the lead-up to the Inauguration on January 20, 2005, and that it will suffer a future injury in fact in the lead-up to the next Inauguration on January 20, 2009.  Plaintiff ANSWER Coalition itself sought a permit that was granted in part and denied in part for the 2005 Inauguration, and it intends to seek a permit again for the 2009 Inauguration.  The Court

concludes that this is sufficient injury in fact to support the conclusion that ANSWER has

standing to pursue this claim; it is not an impermissible speculative "some day" intention within

the meaning of Lujan.[12]

    With respect to mootness, the Court concludes that this claim is not moot because

it is capable of repetition, yet evading review.  Plaintiff has demonstrated that "the challenged

action is in its duration too short to be fully litigated prior to its cessation or expiration," and that

there is a "reasonable expectation that the same complaining party will be subjected to the same

action again."  Beethoven.com LLC v. Librarian of Congress, 394 F.3d at 950 (citing Weinstein

v. Bradford, 423 U.S. at 149 (brackets omitted)).  Plaintiff ANSWER Coalition has submitted a

sworn declaration stating its intent to protest at the next Inauguration, regardless of which

political candidate or party wins the 2008 election.  See Affidavit of Brian Becker ¶ 10, Exh. 6 to

Pl's Mot.  When ANSWER does protest again, there is a "reasonable expectation" that it will be

subject to the policies and procedures of the National Park Service, which controls the

Pennsylvania Avenue National Historic Park.  See Christian Knights of the Ku Klux Klan

Invisible Empire, Inc. v. District of Columbia, 972 F.2d at 370-71 (finding issues surrounding

issuance of permits to demonstrate "capable of repetition, yet evading review" because there was

"a reasonable likelihood . . . that the Klan will again seek a permit to march in the District" and

---

    [12] Plaintiff puts forth an alternative theory of standing.  See Pl's Reply at 11.  "[I]n the First Amendment context, litigants are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."  Virginia v. American Booksellers Assoc., 484 U.S. 383, 392-93 (1988) (internal ellipses, quotations and citations omitted) (citing Secretary of State of Maryland v. J.H. Munson Co., 467 U.S. 947, 956-57 (1984) and quoting Broaderick v. Oklahoma, 413 U.S. 601, 612 (1973)).  The Court does not analyze or rely on this theory of standing because unlike the cases cited, this case does not present a challenge to a statute.

affirming the grant of a preliminary injunction).

As in Christian Knights, the Court finds that there is a reasonable expectation that the ANSWER Coalition, a regular protester in the District, will seek to protest at an Inaugural Parade in the future.  The Court concludes that there is (far more than) a "reasonable expectation," see Honig v. Doe, 484 U.S. 305, 318 n. 6 (1988), that the NPS will apply for a permit on behalf of the PIC for inauguration events in January 2009, and that plaintiff also will apply for a permit.  See Affidavit of Brian Becker ¶ 10, Exh. 6 to Pl's Mot.  Without passing on the merits of plaintiff's claims, the Court concludes that the allegations in the amended complaint are enough to demonstrate that this claim is not moot because it is capable of repetition, yet evading review.  To paraphrase the D.C. Circuit's decision in Christian Knights, "[b]ecause [ANSWER] may [protest] again, in which event the circumstances attending its permit request in this case would likely recur, [the Court] hold[s] that the case continues to present a live controversy."  Christian Knights of the Ku Klux Klan Invisible Empire, Inc. v. District of Columbia, 972 F.2d at 367.

Plaintiff's second request for relief, also related to Count I of the amended complaint, is for a "[d]eclaratory judgment that the NPS policy and practice of granting to the PIC exclusive use of the public space abutting the Inaugural Parade route is unconstitutional; an injunction prohibiting such discriminatory conduct in the future; and a mandatory injunction that the NPS make the sidewalks abutting the Inaugural Parade generally open to *the public* for use, with accommodations for reasonable logistical needs and to afford access by *the disabled* where such reasonable accommodations neither favor nor burden any group on the basis of political association or viewpoint, and to also allow the continued traditional use of the sidewalk in front

of the Wilson Building for a reviewing stand for *District of Columbia officials and invitees*

consistent in size with that used in 2005[.]"  Am. Compl. at 27 (emphasis added).

        First, the Court concludes that plaintiff has no standing to make requests generally

on behalf of "the public," the "disabled," or "District of Columbia officials and invitees."  With

respect to the request for a declaratory judgment "that the NPS policy and practice of granting to

the PIC exclusive use of the public space abutting the Inaugural Parade route is unconstitutional;

[and] an injunction prohibiting such discriminatory conduct in the future," the Court concludes

that the ANSWER Coalition does have standing, for the same reasons explained above.

ANSWER and its members wish to view the 2009 Inaugural Parade from the sidewalks all along

Pennsylvania Avenue and to engage in political dissent there.  ANSWER therefore has both

organizational and representational standing to litigate for such non-exclusive access to those

sidewalks.

        The Court concludes that this claim also is not moot because it is capable of

repetition, yet evading review.  As with the claim discussed above, plaintiff has demonstrated

that "the challenged action is in its duration too short to be fully litigated prior to its cessation or

expiration," and that there is a "reasonable expectation that the same complaining party will be

subjected to the same action again."  <u>Beethoven.com LLC v. Librarian of Congress</u>, 394 F.3d

at 950 (citing <u>Weinstein v. Bradford</u>, 423 U.S. at 149 (brackets omitted)).  These requests are

legitimately "directed at the legality of the standards utilized" by the defendants and therefore are

not moot.  <u>Better Government Ass'n v. Department of State</u>, 780 F.2d at 91.

        Plaintiff's third request for relief, related to Count II of the amended complaint, is

for a "[d]eclaratory judgment that the prohibition on supports for signs and placards is

unconstitutional, and a mandatory injunction that the NPS and/or Secret Service promulgate constitutionally permissible regulations regarding use of such supports if they have a constitutional basis for regulating such items[.]" Am. Compl. at 27.  It is undisputed that defendant United States Secret Service decided to exclude certain items from the Inauguration parade route, and that among the prohibited items were sign supports.  See Declaration of Donato Coyer ("Coyer Decl.") ¶¶ 16-18.  The "list of prohibited items was distributed to the National Park Service on December 17, 2004, and was subsequently forwarded to groups who were issued permits by the National Park Service for space along the parade route." Id. ¶ 11.  This claim is not moot because it, too, is capable of repetition, yet evading review.  Plaintiff has demonstrated a "reasonable expectation that the same complaining party will be subjected to the same action again."  Beethoven.com LLC v. Librarian of Congress, 394 F.3d at 950 (citing Weinstein v. Bradford, 423 U.S. at 149 (brackets omitted)).

        In Bourgeois v. Peters, the Eleventh Circuit held that the city of Columbus, Georgia's decision to implement magnetometer searches at an annual protest fit within this exception to the mootness doctrine.  See Bourgeois v. Peters, 387 F.3d at 1310.  The City argued that the exception did not apply because "the decision to implement magnetometer searches is made anew each year, based on circumstances as they exist at that time." Id.  The Eleventh Circuit disagreed, concluding that there was a reasonable expectation that the searches would continue "because all of the circumstances that the City deemed sufficient to implement the search in 2002 continue to exist today, and by all indications will continue to persist into the indefinite future." Id.  The same is true here; the Court does not find it plausible in this post-9/11 world that the Secret Service will implement any fewer or less stringent security measures for

Presidential Inauguration events in 2009 than it did in 2005.  Accordingly, with respect to the ban

on sign supports challenged by the plaintiff, the Court concludes that there is a very "reasonable

expectation that the same complaining party will be subjected to the same action again."

Beethoven.com LLC v. Librarian of Congress, 394 F.3d at 950.  And as with the claims

discussed above, "the challenged action is in its duration too short to be fully litigated prior to its

cessation or expiration[.]" Id. (citing Weinstein v. Bradford, 423 U.S. at 149 (brackets omitted)).

       Plaintiff's fourth request for relief, related to Counts I and III of the amended

complaint, is for a "[d]eclaratory judgment that plaintiffs suffered a violation of their

constitutional rights in connection with the 2005 Inauguration restrictions[.]"  Am. Compl. at 27.

The Court concludes that because it is unable now to grant any meaningful relief to the parties

with respect to the events surrounding the 2005 Inauguration, this is a request for an improper

advisory opinion; that is to say, this claim is moot.  See McBryde v. Comm. to Review, 264 F.3d

at 55;  Payne Enterprises v. United States, 837 F.2d 486, 491 (D.C. Cir. 1988) (requested

declaration from the court that prior government activity was unlawful would be an improper

advisory opinion.); Better Government Ass'n v. Department of State, 780 F.2d at 91 (same).

       In sum, the Court concludes that each of plaintiff's three claims and three of its

four requests for substantive relief, including both declaratory and injunctive relief, are

justiciable; only the request for a declaratory judgment with respect to the 2005 inaugural events

is moot.  An Order consistent with this Opinion will be issued this same day.


                  _____/s/_____

                  PAUL L. FRIEDMAN

DATE:  June 13, 2007          United States District Judge