## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| A.N.S.W.E.R. COALITION | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. Action No. 05-00071 (PLF) (AK) |
| KEN SALAZAR, Secretary, United States Department of the Interior, *et al.* | ) | |
| Defendants. | ) | |

## PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S MEMORANDUM ORDER
## (DOCKET NO. 131, FEBRUARY 3, 2012)

Pursuant to Fed. R. Civ. P. 72(a) and Local Rule 72.2, Plaintiff respectfully herein submits its objections to Magistrate Judge Kay's February 3, 2012 Memorandum Order (Docket No. 131) (hereinafter 'Memorandum Order"), which sets forth privilege determinations regarding documents and information withheld by the U.S. Secret Service.

Without any statement of reasoning applying standards or balancing factors to any or each document at issue, Magistrate Judge Kay issued privilege rulings pertaining to a set of documents, as well as certain rulings that were categoric in nature. Memorandum Order at 10 – 24 (chart identifying whether claim of privilege or protection is upheld). A number of additional missing documents were requested to be provided to chambers. Id. at 24.

As discussed below, Plaintiff objects to the Magistrate Judge's application of the attorney-client privilege and the work product doctrine and the law enforcement investigatory

privilege[1]. Plaintiff maintains it constitutes legal error to issue privilege rulings, particularly

those involving a qualified privilege or protection that mandates a balancing test, without a

statement of reasoning applying those factors to the actual documents at issue. Other errors, such

as the reliance on the case of McNamara v. New York, 607 F.3d 923 (2d Cir. 2010) for the law

enforcement privilege conclusory rulings, rather than applying the balancing test as mandated by

the D.C. Circuit in In re Sealed Case, 856 F.2d 268 (D.C. Cir. 1988) are discussed below.

Plaintiff objects to Magistrate Judge Kay's Memorandum Order in general and categorically, as

it fails to state the applied reasoning with respect to any specific document. However, Plaintiff is

cognizant and appreciative of the time and resources required of the Court to conduct *in camera*

review of materials in dispute. Accordingly, Plaintiff has identified a subset of documents which

are identified as most important to its case, based on Plaintiff's counsel's review of what is

partially available in redacted form and the understanding of Plaintiff's claims. Those are

identified with specificity herein and below.[2] Plaintiff requests the Court conduct *in-camera*

review of these materials and, consistent with the reasoning set forth herein, order their release.

In addition, Plaintiff requests that the remainder of all documents under review by the Magistrate

Judge be reviewed and produced consistent with the principles articulated in any opinion to issue

in response to these objections.

---

[1] Magistrate Judge Kay categorically directed production of those portions of materials withheld on claims of claimed non-relevancy. Often, a large redaction in a document was identified by the Government as withheld on the basis of non-relevancy with an additional privilege or protection applying for some portion therein. Over the past week, Plaintiff has received from defendant a series of documents previously withheld including on grounds of relevancy. It is noteworthy that documents that had been claimed as not relevant include discussion by the Secret Service of planned peaceful demonstrations at the inauguration including by the Plaintiff in this case as well as a document previously redacted specifically where it identified Attorney-Advisor Anne Rowland as a member of the USSS Coordination/Advance Team. These documents are relevant to Plaintiff's case and raise the question as to other documents that Defendant has withheld as "not relevant' despite their being identified in response to the narrowed search conducted in this matter.

[2]       The documents, identified within the body of this filing, are identified by the following bates stamps numbers:  000174, 000175 – 80, 000183, 000185, 000186, 000191, 000316, 000326, 000537, 000562, 000563, 000566, 000588.

Plaintiff has, therefore, focused on documents which appear to be significant to its claims. As Plaintiff references throughout this filing, an important element central to its case is the presence and/or absence of bases that were articulated or not articulated contemporaneous with the mid-December decision to ban sign supports.

A document which presents a contemporaneously relied upon basis for such decision, obviously, is important. At the same time, the absence of articulated bases is equally important, in order to distinguish between *post-hoc* rationalizations and explanations presented as security bases from those that were actually extant and relied upon at the time. A critical element in the constitutional analysis is the "fit" between restrictions on fundamental rights such as free speech and expression along the Presidential Inaugural Parade route and the actual security or other harms against which restrictive measures purportedly protect. Plaintiff does not suggest the existence of any legitimate security basis, let alone one that is constitutionally sufficient. The constitutional analysis, as referenced in prior filings and briefly below, focuses on whether the restrictions on sign supports is underinclusive, overbroad and ultimately unconstitutional.

It bears reminder that this was not merely a restriction of sign supports from passing through checkpoints – a restriction purportedly justified because checkpoint inspection would cause delay – but also a prohibition against the ANSWER Coalition pre-positioning signs with sign supports at its permitted demonstration site for pre-inspection by law enforcement and canines, just as all permittees' equipment from bleachers to generators was to be subject along the route.

## I.     Standard of Review

The Court may modify or set aside a Magistrate Judge's order on non-dispositive pretrial matters if the ruling is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); Local Rule 72.2.

## II.    Portions of Order to which Plaintiff Objects

Magistrate Judge Kay's Memorandum Order (Docket No. 131) sets forth certain standards for reviewing the assertion of the privileges claimed, and identifies which documents are to be disclosed or withheld, however Magistrate Judge Kay does not set forth his reasons for upholding the privileges where upheld. The privileges and protections asserted are qualified privileges, subject to careful balancing analysis especially in the cases of the law enforcement privilege and the work product doctrine each of which may yield based on the importance of the information sought to the case at hand. See Friedman v. Shields, 738 F.2d 1336, 1341 (D.C. Cir. 1984) ("[W]hen the existence of . . . a conditional privilege is established, there is a need to balance the . . . interest in nondisclosure against the need of the particular litigant for access to the privileged information. Whether the materials are available from other sources is a factor in determining the degree of the litigant's need to obtain it from the . . . agency . . . claiming the privilege.")

While Magistrate Judge Kay sets forth the result of his ruling (i.e., whether privilege is upheld or not), *he does not set forth his reasoning, or the application of articulated standards to the documents at issue*. See, e.g., Evans v. Atwood, 177 F.R.D. 1, 5 (D.D.C. 1997) (Magistrate Judge's privilege ruling articulates standards and then "the Court has applied the standard to each document for which the privilege is claimed. Its reasoning as to the appropriate disposition of the privilege for each document is set out in Appendix A."); See also In re Sealed Case, 856 F.2d 268, 272 (D.C. Cir. 1988) ("the physical nature of the materials requested permits the court to consider application of the privilege to individual files.").

Under such circumstances, it is appropriate for the Court to issue its ruling based on its independent review of the materials. See, e.g., Virtual Def. & Dev., Int'l v. The Republic of Mold., 133 F. Supp. 2d 9, 44 (D.D.C. 2001) ("In his order denying the plaintiff's motion to

compel production of the cable, Judge Kay did not set forth his reasons for upholding the

government's invocation of the state secrets doctrine [presumably due to its classified nature].

Because the court has no basis, however, for evaluating Judge Kay's reasoning, the court will

reserve its ruling . . . until it can conduct an independent review of the cable."); See e.g.,

Memorandum Opinion and Order (Docket Entry No. 130) (This Court independently reviewed

documents for applicability of privilege, setting aside Magistrate Judge Kay's ruling based on its

"definite and firm conviction that a mistake has been committed.")

### III.    Case Background and Context

Plaintiff is an anti-war and anti-racism grassroots organization that engaged in free

speech activities along the parade route of the 2005 Presidential Inauguration, as well as has

submitted a permit application to engage in such activities in connection with the 2013

Inauguration.

At issue in this litigation is the decision to ban supports for demonstration signs along the

motorcade route of the Inaugural Parade. The decision to ban supports for signs at the 2005

Inauguration was a significant change in policy and one that had a major impact on First

Amendment rights. Persons, including Plaintiff, who seek to engage in free speech activities in

the midst of a crowd are severely hampered by the deprivation of perhaps the most recognizable

and functional form of speech and written expression, the display of messages held up by

lightweight sign supports. A classic image of civil rights protests is just that: the individual

holding a picket sign or placard held high which conveys the person's message in and above a

crowd. The banning of sign supports imposes substantial hardship on activists and organizers and

works to minimize the visibility of expression at this critical moment in the national political

process when, literally, the whole world is watching.

Plaintiff asserts that the Government decision to ban picket signs was unconstitutional[3] and that the Government's explanation for this significant policy change is false and pretextual.

Plaintiff challenges the Government's narrative, asserted bases and related timelines for the decision to ban sign supports as pretextual and false. The Government contends that there was no policy change, that from the earliest dates of particular discussions of what items were to be prohibited along the parade route (i.e., October, 2004) supports for signs were always on the list of prohibited items as a "given."[4]

---

[3]     Plaintiff sets out two legal theories of proof of unconstitutionality on pages 11 through 19 of Plaintiff's Motion to Compel (Docket No. 68, filed August 25, 2008). On pages 11 through 16, Plaintiff identifies one theory of proof as "The Ban Was Substantially Motivated by Unconstitutional Intent." On pages 16 through 19, Plaintiff identifies a second theory of unconstitutionality in that the "Ban Was Not a Reasonable Time, Place and Manner Restriction and Was Underinclusive as Well as Overbroad." Plaintiff points to the fact that items and potential weapons of greater sharpness, weight, size and girth were allowed to pass through checkpoints and were also allowed to be pre-positioned by the Presidential Inaugural Committee within its permitted areas. According to Defendants, "There is no dispute that certain items were allowed into the secure areas along the Inaugural Parade Route that could have been used as weapons, such as the points of umbrellas." Defendants' Opposition to Plaintiff's Renewed Fed. R. Civ. P. 56(f) Motion at 8 (Docket No. 52, filed Aug. 3, 2007).

        The Government's ban on sign supports was so extreme as to prohibit signs with supports from being pre-positioned in Plaintiff's permitted demonstration area along the route, where the cardboard sign supports would be subject to inspection and would not have to pass through the checkpoints on Inaugural Day, thereby not causing any delay at the checkpoints since they would be pre-positioned and pre-inspected by law enforcement.

[4]     United States Secret Service Assistant Special Agent In Charge (ASAIC) John Bozzuto testified in deposition as follows:

        Q:      At what point do you recall that the determination was made to ban supports for signs and placards along the parade route?
        A:      At what point in advance? I can't say with any specificity. It would probably be early on, because that's one of the things that's kind of a given. It's kind of like we knew firearms was going to be on it. We knew explosives, those kinds of things.
        Q:      So firearms, explosives, posts for signs and placards, those were all, as you said, a given?
        A:      Yes.
See Ex. 1, Deposition of John Bozzuto at 10:15 – 11:4; Id. at 27: 5 – 12; Id. at 28:9 - 14.

        USSS ASAIC Ramon Rendon testified similarly, placing the determination at the very beginning of discussions, when they started in October of 2004.
        Q:      Were sign supports on the very first list that was created, not the formal end point list, but at the very beginning of your discussions, were sign supports prohibited?
        A:      Yes.
        Q:      So at the very onset of your discussions of prohibited materials among the group, sign supports were included?
        A:      Among the items to be included, yes.
        Q:      And when did your discussions begin approximately?
        A:      Approximately October of 2004.
See Ex. 2, Deposition of Ramon Rendon at 20:1 - 12.

Discovery to date has produced evidence that demonstrates the falsity of the Government's narrative.

On November 30, 2004, ASAIC Rendon sent an e-mail to ASAIC Bozzuto in which he writes 'From our previous discussions I think we wanted the following [on signs listing prohibited items] for the parade routes: No bags, explosives, guns. Simple and concise." [Bates No. 000204]. Noticeably absent is a prohibition on supports for signs and placards.

ASAIC Ramon Rendon was designated as "the coordinator for the 2005 inauguration." See Ex. 2, Deposition of Ramon Rendon at 6:11 – 7:20. His superior, USSS ASAIC John Bozzuto was the Secret Service supervisor for the presidential inauguration. See Ex. 1, Deposition of John Bozzuto at 6:21 – 7:8.

In other words, contrary to the Government's assertions, on November 30, 2004, there had already been substantive previous discussions, in the plural, about banned items and the outcome of those previous discussions was that sign supports were not banned for the parade route, only weapons, explosives and bags were.

Between November 30, 2004 and December 15, 2005 there is an exchange of e-mails, the subject of which is prohibited items which reference "recommendations of both AUSA [Assistant U.S. Attorney Marina Braswell] and [USSS agency counsel] Anne Rowland." [Bates No. 000182]. On December 15, 2004, there is an email purporting to list prohibited items which, for the first time, includes "supports for signs and placards" as banned. [Bates No. 000191 – 193].

On December 20, 2004, there is an email stating "yesterday DPD SAIC Coyer, DPD ASAIC Bozzuto and Attorney-Advisor Anne Rowland with Legal came to an agreement on the verbiage the USSS will use on signage listing items prohibited into the Inaugural 2005 events."

An attachment specifies that "supports for signs and placards" are banned. [Bates No. 000194 – 196].[5]

What is also clear from these e-mails, and from deposition testimony, is that Attorney Anne Rowland directly participated in the so-called security determination to ban sign supports. Despite her apparent role in setting policy, functioning as a regulator to determine what may or may not be prohibited, the Government improperly asserts privilege as to her communications and e-mails. As discussed herein, this function is not accorded privilege.

Plaintiff seeks disclosure on these issues because it is important to its case, indeed at the heart of its claims and case. Where the Ninth Circuit disallowed a ban on sign supports as violating the First Amendment, it did so based on a detailed and fact specific evaluation of the purported security bases for the restriction. See Edwards v. City of Coeur D'Alene, 262 F.3d 856, 863-66 (9th Cir. 2001) (observing defendant "provides little empirical evidence suggesting that such stringent measures are necessary to advance its interest in public safety.").

The D.C. Circuit has established clear precedent - - particular arising from the Quaker Action line of cases - - establishing the importance to plaintiff's case of disclosures evidencing the true and actual timelines of decision, discussions and bases, and that it is insufficient to rest on untested affidavits and statements by law enforcement claiming a general need for security, even Presidential security.

As the Court in Quaker Action noted, reversing a lower court's award of summary judgment in favor of the Government, "the plaintiffs had raised issues 'deserving of further exploration by the full processes of a trial on the merits, not simply by presentation of untested

---

[5] A fuller presentation of the series of emails from November through December, 2004 demonstrating the change in policy, and reflecting the direct participation of Ms. Rowland in this process, is set forth at Plaintiff's Motion to Compel (Docket Number 68) at 21 – 22 n.1. This presentation, of course, only contains those emails that had been disclosed as of the date of the motion's filing.

affiant's statements and lawyers arguments.'" <u>Quaker Action Group v. Morton</u>, 516 F.2d 717,

722 (D.C. Cir. 1975) (quoting <u>Quaker Action Group v. Morton</u> (<u>Quaker Action II</u>), 429 F.2d 185,

187 (D.C. Cir. 1970)).

The D.C. Circuit has recognized the need for careful adjudication, based on genuine

disclosure of facts, in order to adjudicate the propriety of restrictions on fundamental rights in the

name of "security."

> Of course the health and safety of the President are of concern to the citizenry.
> But this only poses, it does not answer, the question as to whether the officials
> involved this concern into an excessive preoccupation with security that is
> achieved at the unnecessary expense of First Amendment freedoms. We are aware
> that the issue is difficult and delicate. It is too difficult, too delicate, too dependent
> on careful assessment and weighing of constitutional rights, to rest conclusively
> on the untested declaration of an executive official.

<u>Id.</u> at 723 (quoting <u>Quaker Action Group v. Morton</u> (<u>Quaker Action III</u>), 460 F.2d 854, 860
(D.C. Cir. 1971)).

The importance of the issues, of the information sought by Plaintiff to its case, and the

need for a full presentation to enable this Court to adjudicate the careful balance of rights and

authorities at stake in this litigation warrant the disclosure of the materials at issue.

With respect to the documents for which disclosure is sought, their substance may be

relevant or lead to admissible evidence regardless of whether they specifically manifest the

decision or bases for the prohibition. Even the absence of bases is relevant to the arbitrariness, or

lack of justification, for this decision that worked a deprivation and abridgment of free speech

rights. Even the absence can form the basis for properly framing further deposition inquiry.

Ultimately, while what is directly at issue before the Court is the production of

documents, the framework established here will be relevant to the conclusion of discovery within

this case, including depositions, with respect to inquiry regarding the actual communications

(whether or not reflecting in email communication) of the agency and Ms. Rowland in regulating

and prohibiting the use of sign supports for free speech activities.

## IV.     Applicable Law

### A.  Attorney Client Privilege

#### 1.  Failure to Establish Ms. Rowland Was Acting in a Legal, and Not Regulatory, Capacity

As Magistrate Judge Kay sets forth, the attorney-client privilege "protects confidential

communications made between clients and their attorneys when the communications are made

for the purpose of securing legal advice or services." Memorandum Order at 2 (quoting In re

Lindsey, 158 F.3d 1263, 1267 (D.C. Cir. 1998)).

> The privilege is specific and narrow in scope and it does not attach to any and all communications between an attorney and their client. *See Athridge v. Aetna casualty and Surety Co.*, 184 F.R.D. 200, 209 (D.D.C. 1998) (affirming that this Circuit is "one of the Circuits which construe the attorney-client privilege strictly" and thus, an attorney's communications are privileged when their disclosure would reveal the content of the client's communication to the lawyer.)

Memorandum Order at 2.

The absence of articulated reasoning in Magistrate Judge Kay's opinion is all the more

problematic, and evidencing judicial mistake or error, given the Magistrate's acknowledgment

that

> Applying the attorney-client privilege in the corporate context to communications between in-house counsel and those who personify the corporate image is often difficult "because modern corporate counsel have become involved in all facets of the enterprises for which they work." [Vioxx Prods. Liab. Litig., 501 F. Supp. 2d 789, 797 (E.D. La. 2007)] **Thus, "courts require a clear showing that the attorney was acting in his professional legal capacity before cloaking the documents in the privilege's protection."** Id.

Memorandum Order at 4 (emphasis added).

Magistrate Judge Kay cites additional cases which stand for the same or similar principle,

that the privilege does not apply when agency or in-house counsel are acting in a regulatory or

operational function. Memorandum Order at 3 – 5; See United States v. KPMG L.L.P., 237 F.

Supp. 2d 35, 40 (D.D.C. 2002) (communications made "with respect to business matters, management decisions or business advice are not protected by the privilege"); <u>Vioxx Prods. Liab. Litig.</u>, 501 F. Supp. 2d at 798 ("[o]nly if the attorney is 'acting as a lawyer' . . . may the privilege be properly invoked.").

It appears that Ms. Rowland was not functioning in the role of legal advisor, but was in fact functioning in a regulatory or policymaking function, meaning that she was regulating the rights, responsibilities or conduct of the public and Plaintiff with respect to what items would be permitted or prohibited along the parade route.

> With respect to organizational clients (such as government agencies), attorneys often have more than one role, and the line between those functions is not always easily ascertainable. For example [and in contrast], no private attorney has the power to regulate the rights, responsibilities, or conduct of the public by setting policy.

<u>Gen. Elec. Co. v. Johnson</u>, 2006 U.S. Dist. LEXIS 64907, at *48 (D.D.C. Sept. 12, 2006).

When government attorneys are "in effect . . . making or law" or policy, i.e., acting as a regulator of public or private conduct, "they may not properly invoke the protections of the attorney-client privilege. In that context, the communications are not made for the purpose of securing legal advice or services, but rather for the purpose of developing policy." <u>Id.</u> at *46.

> [T]he privileged role of an attorney does not encompass the establishment of broad agency policy, adjudication of responsibilities . . . or other functions that create the law. Hence, when an attorney is acting more in the nature of a business advisor, legislator, adjudicator, or regulator, the attorney-client privilege generally does not apply. See *In re Lindsey, 158 F.3d at 1269; [Coastal States Gas Corp. v Dept. of Energy, 617 F.2d 854, 863 (D.C. Cir. 1980); Mead Data Central, Inc. v. Air Force, 566 F.2d 242, 253, 255 n. 32 (D.C. Cir. 1977)]*

<u>Id.</u> at *50.

As Special Agent Bozzuto attested, Anne Rowland "was part of our team . . . [She was p]art of the whole advance team that was preparing the security elements of the inauguration." <u>See</u> Ex. 1, Deposition of John Bozzuto at 19:20 – 20:3.

Clearly, Ms. Rowland was "legal counsel" to the Secret Service, but it appears that within that function she participated in the decisions that regulated what items were prohibited.

Mr. Bozzuto testified in deposition that Anne Rowland was "involved in those discussions" of what was going to be on the prohibited item list. Id. at 23:22 – 24:1.

He testified that Ms. Rowland did participate or was consulted in the determination of what items were banned, further attested that she did not "veto" any items that security personnel included on the list, but Defense counsel asserted privilege and directed him not to answer as to whether or not she recommended the inclusion of any items, including sign supports, on the list.

> Q:    Did Ms. Rowland participate in the process to determine what items or item
>        would be on the prohibited items list?
> A:    She was consulted.
> Q:    Did she make any determinations yes or no as to what items would be on the
>        prohibited items list?
> A:    I don't recall her having - - I don't recall her vetoing any items that we had listed
>        on the final list.
> Q:    Did she recommend any items?
> Defense counsel: Objection [Attorney-Client privilege asserted; directive to not answer]

See Ex. 2, Deposition of Ramon Rendon at 40: 14 – 41:11; See genl'y, id., at 40 - 43.

Elsewhere in the same deposition, the Secret Service refused to answer whether Ms. Rowland advanced any legal opinions or consideration about what items could or should be included on the prohibited item list. See Ex. 2, Deposition of Ramon Rendon at 42:9 – 43:9.

An e-mail dated December 20, 2004 announced that "yesterday DPD SAIC Coyer, DPD ASAIC Bozzuto and Attorney-Adviser Anne Rowland with Legal came to an agreement on the verbiage the USSS will use on signage listing items prohibited into the Inaugural 2005 events." [Bates No. 000194 – 196].

At the very least, the agency has failed to establish that she was not acting in a regulatory capacity. The Magistrate Judge made no findings or showings that she was acting in her professional legal capacity, as opposed to a regulatory capacity in which she was regulating the

rights or conduct of the public and Plaintiff with respect to what items would be permitted or prohibited along the parade route.

Even if Ms. Rowland was not making the decision, but was only participating in the process, the details of what was relied upon as a basis or bases for the prohibition remain relevant. See, Memorandum Opinion and Order on Plaintiff's Motion to Compel at 1 - 2(Docket Entry No. 75, Nov. 14, 2008) (granting Plaintiff's motion in part, holding the scope of relevancy encompasses "the production of all documents respecting plaintiff's 'claims relating to the prohibition of sign supports'.")

Otherwise any adjudications in this matter will be based on the *post-hoc* assertions and construction of security claims, as opposed to the actual security interests that were contemporaneously relied upon at the time of the determination in mid-December, 2004. A comparison between what is argued or presented now in proceedings as being security interests which ostensibly justify the prohibition must be made against those interests actually stated and relied upon at the time the decision was made. The Court is entitled to weigh the relevancy and value of security claims that are only made *post-hoc* against those which were actually stated at the time of the decision.

As discussed further below, even if Ms. Rowland was acting strictly as a legal adviser her communications would, under multiple circumstances, not be privileged, for example, where they would not meet the requirements of containing client-supplied confidential information.

**2. Failure to Establish or Find that Materials Contained Confidential Information From Client and that Materials Were Maintained in Confidence**

**a. Communications Not Found to Contain Confidential Information**

The Magistrate Judge's decision does not establish that the only information withheld on the basis of attorney-client privilege is that which is based on confidential information supplied by officials to agency counsel. There, in fact, is *no* showing by the agency that such is the case. The Magistrate Judge's order contains no reasoning applying this standard to specific documents, or portions thereof.

As recognized by Magistrate Judge Kay, in the D.C. Circuit, attorney-client privilege is narrow and scope and strictly interpreted to protect only confidential communications of factual information, otherwise unknown, which the client official communicated to the attorney. See Evans v. Atwood, 177 F.R.D. 1, 5 (D.D.C. 1997).

With respect to communication from agency counsel, it protects that confidential factual information initially conveyed by the client and *the privilege protects legal advice only to the extent it rests on that confidential information initially conveyed by the client.* See E.P.I.C. v. Dep't of Justice, 584 F. Supp. 2d 65, 79 (D.D.C. 2008) (lawyer's communication must rest in significant and inseparable part on the client's confidential disclosure); Upjohn Co. v. United States, 449 U.S. 383, 396 (1981) (privilege does not protect communication simply because it involves the government's counsel).

The Government claims that the purpose of Ms. Rowland's participation in the decision-making process was *exclusively "to ensure that agency actions conformed to the law."* See Ex. 1, Deposition of Bozzuto at 20:7 – 20; See Ex. 2, Deposition of Rendon at 40:1 – 8 (same).

If "in other documents, [agency officials] simply seek legal advice as to a certain issue intending, one supposed, to rely on that advice in conforming the [agency conduct] to the law. . . Persons who have sought legal advice without communicating confidential information will not be less frank than they should be in communicating in the future with agency counsel merely

because the world only learns that they sought legal advice as to a particular matter. . ." Evans, 177 F.R.D. at 4. "If, as is true of many of the documents, the client official sought the opinion without disclosing any confidential information, the existence of the opinion and its contents are not privileged." Id. (citing Mead Data Central, 566 F.2d at 253).

The fact that agency counsel offers advice in order to conform agency conduct to the law does not protect such communication under the attorney-client privilege unless her communication contains confidential client-supplied information. To be protected, any legal advice must rest upon, or be based upon, confidential communications supplied by the client made for the purpose of seeking such advice. See Minebea Co. v. Papst, 229 F.R.D. 1, 2, 9 (D.D.C. 2005) (citing Tax Analysts v. IRS, 117 F.3d 607, 618 (D.C. Cir. 1997)) ("The problem is that the word 'confidential' is being used in far too many contexts. The holding in In re Sealed Case could not have been clearer. A communication from an attorney to client must not only be made [1] 'in confidence' [2] for the purpose of transmitting legal advice, but it must also, [3] 'rest on confidential information obtained from the client.'").

A communication from agency counsel conveying existing policies is not confidential, and is not privileged. A communication from agency counsel conveying a "neutral, objective analyses of agency regulations" or policies is not confidential or privileged. A communication from agency counsel conveying how to apply established policies in a particular circumstance is not privileged. See Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 863-66 (D.C. Cir. 1980).

These communications are not confidential. On the contrary, to the extent they rely or convey agency policy, they are a part of the working law of the agency. See Tax Analysts v. IRS, 117 F.3d 607, 619 (D.C. Cir. 1997) ("the attorney-client privilege may not be used to protect this

growing body of agency law from disclosure"). There is no agency proprietary interest in policy. See Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 360-61 (2d Cir. 2005) (attorney-client privilege dissolves if the communication has been adopted as agency policy).

Here, the Government claims that the decision to ban sign supports was not a policy change, but merely the application of a pre-existing policy that was a "given." Plaintiff maintains this to be a pretextual and false claim, and seeks disclosure of related communications and materials that would, among other things, establish that there was a decision made in mid-December to ban sign supports, that would reveal the presence or absence of bases contemporaneously relied upon in reaching that decision. The absence of such bases would support Plaintiff's claim of unconstitutional under-inclusiveness or overbreadth in the restrictions that abridged and abridges Plaintiff's free speech rights.

### b. Communications Not Found to Have Been Maintained in Confidence

Distinct from the issue of whether a particular communication contains confidential client-supplied information, is whether a communication has been maintained in confidence. More specifically, the issue must be whether the agency has carried its burden to evidence that it has maintained information in confidence for which privilege is claimed.

Indeed, the very privilege log submitted by the Secret Service demonstrates that the agency has painfully failed to establish that it has limited the distribution and confidentiality of the materials for which it asserts privilege. "The burden is on the agency to demonstrate that confidentiality was expected in the handling of these communications. . ." Coastal States Gas Corp., 617 F.2d at 863. The test is whether the agency is able to demonstrate that the documents "were circulated no further than among those members 'of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication.'" Id.

at 863 (citing Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 9 (D.C. Cir. 1977))

Repeatedly, the Secret Service distribution list states "Unable to determine specific individuals who received document but under Secret Service standard operating procedures it would have been distributed to law enforcement entities involved in 2005 Inauguration." (E.g., The 2005 Presidential Inauguration Operational Security After Action Report, Bates Nos. 000006-000065; Email Regarding Planned Protest Activity by Anarchist Groups, Bates Nos. 000273-000274; Protective Intelligence Assessment: 55th Presidential Inauguration, January 20, 2005, Bates Nos. 000275 – 000281; 54th Presidential Inaugural January 20, 2001 After Action Report, Bates Nos. 000282-000287) (See Ex. 3, Distribution List (distribution list prepared by Government; emphasis through shading added by Plaintiff). [6]

For all of these materials as reflected by the shading on the Distribution List, Ex. 3, the agency represents it is "**unable to determine**" who received the materials, does not demonstrate an effort to maintain the materials in confidence, and rests solely on the conclusory existence of some unidentified standard operating procedure.

Some documents are identified as being sent to distribution lists, but the agency is unable to identify any further information about distribution. This includes the following group lists: "vpd.all," "r1," "iddesk," "ird," "assessment," "idops," "trip," "idsaics," "inaug05," "dpd.all." See e.g., Ex. 3 Distribution List, "E-mail regarding confidential informant provides planned protest activity by anarchist groups," Bates Nos. 000273-000274.

*Bates Nos. 000185, 000186, 000191, 000537, 000563, 000566 (Emails dated 12/07/04 – 12/15/04 from Attorney Rowland to Special Agent Rendon)*

---

[6]     Exhibit 3 is a Government produced spreadsheet hereinafter referred to as the "Distribution List." As produced by the Government, it was titled or referenced as the "Master List of Persons who Prepared and/or Received Documents Claimed Privilege." The shading has been added by Plaintiff for emphasis.

Magistrate Judge Kay does not set forth any reasoning as to why the privilege applies to these communications. The work product doctrine, however, was rejected. So the only remaining applicable privilege is the attorney-client privilege.

The date range is the period immediately leading up to the final decision on what items would be banned and the addition of sign supports onto the final list to be posted on inaugural signage. The subject lines include "One more item," "Another thought," "draft signs and letter (including an attachment of the final or draft-final list of prohibited items)," "RE: Inaugural signs" and "FW: Signs (again)." These all suggest discussions pertaining to the list of prohibited items.

As referenced above, the privilege is applied strictly in the D.C. Circuit. It only protects client-supplied *confidential* information where contained in an attorney's communication.

It does not shield attorney communications where the attorney is acting in a regulatory function, such as determining the rights or restrictions on the public or Plaintiff to bring items through checkpoints or within the parade perimeter.

These communications, pertaining to the signage and the list of what will be prohibited or permitted, are critical communications. Ultimately, the final list was published. It appears that the Government wants to put forth apparently *post hoc* security styled rationalizations for the ban on sign supports, but wants to shield these communications as secret.

The Magistrate Judge's opinion does not set forth any reasoning pertaining to these documents supporting why all attorney communications should be privileged and cloaked in secrecy and, as above, Plaintiff contends that - - from all appearances to Plaintiff - - these are not appropriately withheld.

*Bates No. 000562 (December 16, 2004 e-mail from Attorney Rowland to multiple agents and counsel)*

18

For the same reasons set forth in connection with Documents 000185, 000186, 000191, 000537, 000563, 000566, Plaintiff objects to the upholding of the attorney-client privilege with respect to Document 000562. Here, too, the work produce doctrine was rejected by the Magistrate Judge. The sole relevant privilege is attorney-client.

*Bates No. 000316 (10/7/04 e-mail from Attorney Rowland to Special Agent Foley, forwarding to Foley an e-mail between Rowland and AUSA Braswell)*

The sole privilege asserted for this document is attorney-client. It is not claimed as work product doctrine protected. As such, even though this involved a communication initiated by an attorney, it is in fact an attorney to attorney communication which was forwarded to an agency official that is redacted. It is not an attorney to client communication that is redacted. No work product protection has been claimed or found.

As such, even facially, this email does not fall within the attorney-client privilege.

Even were it considered under those standards, as set forth above and in In re Sealed Case, a communication from an attorney to client must not only be made [1] 'in confidence' [2] for the purpose of transmitting legal advice, but it must also, [3] 'rest on confidential information obtained from the client.' There is no showing by the Government or reasoning set forth by the Magistrate Judge that establishes that what has been redacted meets these standards.

*Bates No. 000588 (1/4/05 E-mail from AUSA Braswell to Attorney Rowland, forwarded on to Special Agent Bozzuto, Coyer and counsel)*

The subject of this attorney to attorney communication is "Checkpoints." No work product doctrine protection is claimed. For the reasons set forth, above, with respect to Doc. # 000316, Plaintiff objects to the upholding - - without apparent foundation or articulated reasoning - - of the attorney-client privilege to this document.

**B.  Work product protection**

The Magistrate Judge's Memorandum Order, while identifying certain general principles regarding work product protection does not identify all of the relevant legal considerations and does not explain how it reasoned the applicability of any such principles to any particular document or information.

The work product doctrine applies only to information or material prepared in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)(A); See also Evans v. Atwood, 177 F.R.D. 1, 6 (D.D.C. 1997). If the document itself or supporting evidence does not indicate that it was prepared in anticipation of litigation, the protection must be denied. See, e.g., United States v. KPMG L.L.P., 237 F. Supp. 2d 35, 43-47 (D.D.C. 2002).

"The concept captured by the words 'in anticipation of litigation and for trial' has a temporal and motivational dimension." Evans, 177 F.R.D. at 6.

In December, 2005, no litigation had as yet been filed over the sign support issue. Litigation was filed on January 14, 2006.  Plaintiff notes that, although there have been persistent Inauguration related lawsuits, none of the ongoing or prior cases pertained to a ban on sign supports. The 2005 Inauguration was the very first Inauguration to institute such a ban within a perimeter surrounding the parade route. The litigation filed on January 14, 2006 was litigation of first impression.

Work product doctrine is a qualified protection, not a privilege. It can be overcome if a party has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A)(ii). "Courts do not recognize the privilege where to do so would undermine the discovery process and deprive the Court of important evidence." Texas v. United States, 2012 U.S. Dist. LEXIS 5, at *12 (D.D.C. Jan. 12, 2012) (citing Ex rel. Fago, 242 F.R.D. 16, 19 (D.D.C. 2007)).

The party asserting protection under the doctrine must establish a record that the involved counsel was working in a legal rather than a policy or regulatory role, as to which no work-product protection would apply in any event. Texas v. United States, 2012 U.S. Dist. LEXIS 5, at *29 (D.D.C. Jan. 12, 2012) (citing In re Lindsey, 148 F.3d at 1106). As discussed above, in the discussion involving attorney-client privilege, this has not been established and the evidence is to the contrary.

*Bates No. 000183 (12/7/2004 email from Anne Rowland to Ramon Rendon)*

The Government claimed attorney-client and work product protection and non-relevancy for this communication, as well as law enforcement privilege for e-mail address information. The Magistrate Judge overruled the claim of attorney-client privilege and the non-relevancy objections but recognized the work product doctrine. No specific reasoning is set forth by the Memorandum Opinion as to the basis for the recognition of the work product doctrine protection.

Plaintiff has not objected to the withholding, under law enforcement privilege, of portions of e-mail addresses. The only issue for this document, therefore, is work product doctrine.

The date of this communication is December 7, 2004, before the commencement of litigation on January 14, 2005 and apparently before the decision to ban sign supports has been made and manifest in Inaugural signage. Therefore, work product doctrine does not protect this as it was not drafted in anticipation of litigation. Although the e-mail from Attorney Rowland contains language "Attorney-Client Privileged / Attorney Work Doctrine Protected Communication" at the bottom, this appears to be boilerplate and not dispositive as to its actual character. Indeed, the Magistrate Judge rejected the claim of attorney-client privilege for this.

On the contrary, going to the issue of motivation, Ramon Rendon attested that he when he was discussing the prohibited items list with Ms. Rowland, that he was not making

determinations in consideration with possible litigation in mind. See Ex. 2, Deposition of Rendon at 40:14 – 17; See also Ex. 1, Deposition of Bozzuto at 22:8 – 14 (same).

The subject of the e-mail is "RE: Inaugural signs." The timing of the e-mail places it at the time of the decision to ban sign supports, as reflected in the production a few days later of the first list identifying sign supports as prohibited.

The work product protection is not appropriate where Ms. Rowland is acting in a regulatory function, i.e., participating in the determination of whether sign supports will be prohibited at the checkpoints.

If the communication relates in any way to sign supports, or to what is being prohibited and what is not being prohibited even if it does not specifically reference sign supports, it is important to Plaintiff's claims. Plaintiff seeks both any contemporaneous evidence of the actual bases for the sign support prohibition. The absence of a stated basis in the context of a discussion pertaining to prohibited items is equally relevant to demonstrating that the bases now asserted were not actually relied upon in the decision making but are, in fact, *post hoc* rationalizations for purposes of litigation. Plaintiff requires disclosure of what was being discussed as prohibited, in order to evaluate item characteristics in support of its underinclusive and overbreadth theories of unconstitutionality. Plaintiff has a substantial need for such information and cannot, under any other means, secure the substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A)(ii).

*Bates Nos. 000175- 80 (12/17/04 through 12/29/04 emails between Anne Rowland and Special Agent Anthony D. Saler)*

Bates Nos. 000175 – 178 contains a series of e-mails between attorney Anne Rowland and SA Anthony D. Saler. These include emails from Saler to Rowland, and also emails from Rowland to Saler.

The Rowland-Saler communications are all forwarded, on January 3, 2005 to other agency attorneys (as reflected on the top of Doc. 000175).

The sole relevant claimed protection for the redactions on these pages is work product doctrine. As above, plaintiff has not objected to redaction of portions of email addresses.

Bates No. 000178 is the first page of a four page document (Bates Nos. 000178 – 181). The Government claimed work product doctrine on three pages (178, 180 and 181). The subject line of the email is "legal update" and the subject matter clearly relates to the items prohibited along the parade route, as indicated by the fact that the email at 000178 identifies an attachment, "Inaug.list.doc" and a copy of that attachment is produced at 000179 and includes the final list of prohibited items including "Supports for signs and placards." Work product protection has been recognized for all words of the communications from either Attorney Rowland or from Agent Saler. As stated earlier, attorney-client privilege is not claimed for this series of communications, which may indicate a lack of confidential client-supplied communications contained therein.

Bates Nos. 000175 – 177 is a series of emails combined on a single printout, including the email located at 000178 without attachments. Each contains the same subject line. Each contained e-mail is between Attorney Rowland and Agent Saler, with the exception of one e-mail at the top of 000175 which forwards the entire set of communications on to agency counsel.

The date of this series of communication between Ms. Rowland and SA Saler is December 17, 2004 through December 29, 2004, all before the commencement of litigation on January 14, 2005 and all apparently at or shortly after the time of the decision to ban sign supports has been made and manifest in Inaugural signage. Therefore, work product doctrine does not protect this as it was not drafted in anticipation of litigation notwithstanding the involvement of an attorney.

The e-mail series, in whole or part, clearly relates to the items prohibited along the parade route and/or related signage as the e-mail attachment produced at 000179 conveys the final list of prohibited items (Bates No. 000179).

The work product protection is not appropriate where Ms. Rowland is acting in a regulatory function, i.e., participating in the determination of whether sign supports will be prohibited at the checkpoints. Yet, there is nothing in the reasoning addressing whether she was or was not functioning in such a role.

As discussed above and herein, the work product doctrine is qualified and yields to Plaintiff's substantial need for the materials where such materials or the substantial equivalent cannot be obtained elsewhere. See Fed. R. Civ. P. 26(b)(3)(A)(ii).

Plaintiff has a substantial need for the referenced communications. If the communication relates in any way to sign supports, or to what is being prohibited and what is not even if it does not relate to sign supports, it is important to Plaintiff's claims. Plaintiff is entitled to any contemporaneous evidence of the actual bases for the sign support prohibition. The absence of a stated basis in the context of a discussion pertaining to prohibited items is equally relevant to demonstrating that the bases now asserted were not actually relied upon in the decision making but are, in fact, *post hoc* rationalizations for purposes of litigation. Any discussion of what is under consideration for prohibition is relevant to plaintiff's theories of unconstitutionality, which turn in part on the underinclusiveness and overbreadth of the restrictions as well as the fact that certain items that are clearly of equal or greater danger or potential as weapons (e.g., umbrellas with their pointed metal spines) were permitted through the checkpoints or in the parade perimeter.

*Bates No. 000174 (11/30/04, 12/1/04 emails between Attorney Rowland and AUSA Braswell)*

The Magistrate Judge upheld the assertion of work product doctrine for these two e-mails between attorneys. The e-mails precede in time the finalization of the list of prohibited items in mid-December and have as their subject "Inauguration issues." The filing of litigation in this case occurred on January 14, 2005 and there is no apparent indication on the face of the documents as redacted that they are prepared in anticipation of litigation. Indeed, given that the sign support determination was not made until mid-December, there cannot reasonably have been any anticipation of litigation on December 1, 2004 over a decision that had not even been made. No prior or then-pending inaugural litigation pertained to sign supports.

Plaintiff's counsel is sensitive to the protection of communications between counsels. However, Plaintiff has a substantial need for any information that relates to its claims, particularly since the sole source of information can only be the Government itself. There is no reasoning set forth by the Magistrate Judge as to why the qualified work product doctrine protection should apply to protect these communications, in whole or in part. To the extent that the information contained therein, even in part, is relevant to Plaintiff's claims or theories of proof or the determination as to what will be prohibited or to sign supports specifically, the Plaintiff has a substantial need for such information and it cannot be secured through any other means. See Fed. R. Civ. P. 26(b)(3)(A)(ii).

Furthermore, where attorneys are acting in a regulatory function, determining or participating in the determination as to what restrictions the public or Plaintiff will be subject to, the doctrine simply does not apply.

*Bates No. 00326 (1/15 - 16/2005 e-mails between Anne Rowland and Intelligence Research Specialist Zachary Ainsworth)*

These three emails have been withheld on the basis of work product doctrine. They appear to be prepared in anticipation of - - and, indeed in specific response to - - litigation filed on January 14, 2005 over the sign support issue.

The subject is "Sticks cont". Intelligence Research Specialist Ainsworth, in the un-redacted portion, states "Sticks can be used to pry up cobbles, planters, etc." Plaintiff seeks production of the redacted portion, to lend context to the un-redacted statement above. The un-redacted statement is consistent with a small number of other e-mails from Specialist Ainsworth to Attorney Rowland made in response to Plaintiff's filing of litigation over the sign support issue. Ainsworth's communications all appear to be the provisions of *post-hoc* justifications to Rowland that can be used to justify to the Court why a ban on sign supports was implemented. Bates Nos. 000321-22, for example, contains a photo of persons using baton-like instruments in Afghanistan in what Ainsworth describes as "protests by Muslim groups against the US-led air strikes on Afghanistan." Another, Bates Nos. 000323-24 has Ainsworth explaining that huge 20 foot poles "may be used to construct Tripods . . . to block roadways and building entrances." All of these are, of course, dissimilar and manufactured *post-hoc* rationalizations as distinct from actual articulated concerns that were contemporaneously relied upon in determining the ban. The redacted portion of the e-mail may provide support or context for this argument and/or will confirm the nature of the request to which Ainsworth was responding. Plaintiff has a substantial need for this information, particularly if Plaintiff will need to respond to or contend with the presentation of these *post-hoc* rationalizations being presented in Court by the Government as purported security justifications for the ban when, in fact, they were not even considered at the time. The information cannot be secured any other way than production through the Government. See Fed. R. Civ. P. 26(b)(3)(A)(ii).

**Law Enforcement Investigatory Privilege**

Plaintiff also does not believe that the Magistrate Judge's upholding of Law Enforcement Privilege was properly analyzed in conformity with the relevant balancing considerations as illustrated by the ten Frankenhauser factors. However, based on the production of additional materials over the past week, and others that are being produced under protective order, Plaintiff is not at this time prioritizing any outstanding materials withheld on the assertion of Law Enforcement Privilege and in the interest of judicial economy is not requesting this Court undertake its own *in camera* review of any identified materials withheld solely on that basis.

However, Plaintiff does object to the Magistrate Judge's rulings with regard to Law Enforcement Privilege, and notes that there are additional materials which are currently under review by the Magistrate Judge and further that there is outstanding deposition discovery to be taken which may 1) render withheld documents more significant than Plaintiff is able to determine at this time and/or 2) may be subject to similar improper assertions of privilege over the same subject matter.  Plaintiff thus is not able to waive objection to the Magistrate Judge's analysis and upholding of Law Enforcement Privilege as asserted by the Defendant.

Binding D.C. Circuit precedent set forth in In re Sealed Case, discussed below, mandates the Court carefully consider and set forth its reasoning applying the balancing test applying the law enforcement investigatory privilege to each document under review. In re Sealed Case, 856 F.2d 268, 272 (D.C. Cir. 1988); See also Tuitte v. Henry, 181 F.R.D. 175, 177 (D.D.C. 1998). The Memorandum Order does not do this, a failure which constitutes legal error.

The Magistrate Judge, adopting the framework suggested by the Government, has chosen to apply a recent Second Circuit ruling in the case McNamara v. New York, 607 F.3d 923 (2d

Cir. 2010) rather than following the D.C. Circuits precedent for applying the law enforcement investigatory privilege as mandated by the Circuit in In re Sealed Case, 856 F.2d 268.

The McNamara case imposes a "strong presumption" that any claim of law enforcement privilege, once asserted, be used to deny access to materials in civil litigation, including that arising under Section 1983 the focus of which is to ensure governmental compliance with the U.S. Constitution or to remedy prior non-compliance. Under McNamara, to gain access to materials, a plaintiff must show a "compelling need" and then, even with such showing, disclosure is not certain. McNamara, 607 F.3d at 945. The McNamara case diverges from prior precedent applied within the Second Circuit. See, e.g., Kunstler v. City of N.Y., 439 F. Supp. 2d 327, 328 (S.D.N.Y. 2006) (applying a balancing test, Court observes that "impediments to fact-finding in a § 1983 case are not favored."); King v. Conde, 121 F.R.D. 180, 193 (E.D.N.Y. 1988) (collecting cases that support the proposition that disclosure furthers the public interest in ensuring proper police conduct).

As District Judge Weinstein cited in King v. Conde,

> Each citizen "acts as a private attorney general who 'takes on the mantel of the sovereign,'" guarding for all of us the individual liberties enunciated in the Constitution. Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all. Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.

Id. at 195 (quoting Wood v. Brier, 54 F.R.D. 7, 10-11 (E.D. Wis. 1972)).

The McNamara case diverges sharply from the precedents applied by the D.C. Circuit and the courts within this Circuit. The McNamara case was focused on the disclosure of undercover officer intelligence field reports, where officers infiltrated various political and activist organizations. McNamara, 607 F.3d at 930. The subject event was the 2004 Republican

National Convention, and the purported law enforcement concern arose with reference to anti-globalization protests and the World Trade Organization meetings held in Seattle in 1999. Id.

The McNamara ruling is relatively extreme. It holds that such materials may not be disclosed subject to protective order and, going even further, reasons that even judicial officers cannot be entrusted with such information under seal. See id., supra, at 935-39

Here, in Washington, D.C., there have been substantial activist mobilizations post-Seattle. Plaintiff's counsel in this case has served as plaintiffs' counsel in numerous post-Seattle protest lawsuits asserting constitutional violations by law enforcement in connection with those events, to include the April, 2000 IMF/World Bank protests (Becker v. District of Columbia, Civil Action No. 01-00811 (PLF)), the January, 2001 Presidential Inaugural Parade (International Action Center, Civil Action No. 01-00072 (GK)), and the anti-globalization and anti-war protests timed to coincide with the September, 2002 IMF/World Bank meetings (Barham v. Ramsey, Civil Action No. 02-2283 (EGS)).

In these cases, undersigned counsel has received - - both under protective order and without protective order - - the very same undercover field reports from the D.C. Metropolitan Police Department and law enforcement. In connection with the 2001 Inauguration, where plaintiffs presented well-founded claims of MPD misconduct committed in the process of infiltrating activist organizations in advance of the Inauguration, Judge Kessler even ordered protected disclosure to plaintiffs' counsel and a specific limited number of activist organizers photographs of the undercover police infiltrators so that their identities could be associated with their alleged misconduct, which included officers interrupting public meeting to propose the planting of bombs and calling in of false bomb threats. Filings, where appropriate, have been made under seal, without any Judge or judicial officer releasing such information to the public.

As Judge Royce C. Lamberth wrote in <u>Tuitte</u>, 181 F.R.D. 175, describing the law enforcement balancing test as it is applied in our Circuit,

> [I]t is appropriate to conduct the balancing test for determining whether the law enforcement privilege applied with an eye towards disclosure. As the Supreme Court has stated, "whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth."

<u>Id.</u> at 177 (quoting <u>United States v. Nixon</u>, 418 U.S. 717, 863 (1974)).

The <u>McNamara</u> case, which sharply limits disclosure and impairs the truth finding and government accountability function of Section 1983 litigation, is not binding in this Circuit. Nor does Plaintiff suggest it be followed or influential to this Court.

This Circuit, the D.C. Circuit, requires that the Court "must consider" the multiple factors that constitute the appropriate balancing test to determine whether the qualified law enforcement privilege should result in disclosure or non-disclosure. These are referenced in the next subsequent section, below.

The law in this Circuit is set forth in <u>In re Sealed Case</u> as follows:

> [T]he law enforcement investigatory privilege is qualified. The public interest in nondisclosure must be balanaced against the need of a particular litigant for access to the privileged information. [*Black v. Sheraton Corp. of America, 564 F.2d 531, 545 (D.C. Cir. 1977); Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1342 (D.C. Cir. 1984)*] **The process of identifying and weighing the competing interests cannot be avoided.** *Friedman, 738 F.2d at 1342.* This Circuit has cited the list contained in *Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D. Pa. 1973)*, as illustrative of the factors **the district court must consider. . ."**

<u>In re Sealed Case</u>, 856 F.2d at 272 (emphasis added).

It constitutes legal error and grounds for reversal where the Court's discovery order "does not show engagement in this essential balancing process." <u>Id.</u>; <u>See also</u> <u>Tuitte</u>, 181 F.R.D. at 177 ("Because this is a qualified privilege, its application necessarily requires a court to" conduct the balancing of factors).

The Memorandum Order at issue in this case does not engage in this mandatory careful balancing of the ten Frankenhauser factors, a substantial number of which weight in favor of disclosure. Each is identified and applied below. See Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D. Pa. 1973).

1. *The extent to which disclosure will thwart governmental by processed by discouraging citizens from giving the government information.* To the best of Plaintiffs' knowledge, the material at issue does not identify citizens who have come forward with tips or information that initiate or relate to an investigation. Consequently, there is no risk that disclosure has any relation to, much less any adverse impact, on whether citizens give the government information. This is not, for example, a situation where the materials involve disclosure of statements by witnesses or complainants or informants pertaining to an actual or possible crime. The absence of risk weighs strongly in favor of disclosure.

2. *The impact upon persons who have given information of having their identities disclosed.* For reasons stated in relation to factor #1, above, there is no relation, much less adverse impact, on persons who have given information of having their identities disclosed. The absence of risk weighs strongly in favor of disclosure.

3. *The degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure.* On the contrary, disclosure of information relevant to good-faith complaints of unconstitutional conduct leads to affirmative improvements in government operations and protection of individual rights. Here, where free speech rights, essential to a functional constitutional democracy, are at issue, the disclosure and any improvement will be exactly what is envisioned within a properly functioning tripartite system of checks and balances. This factor weighs strongly in favor of disclosure.

4. *Whether the information sought is factual data or evaluative summary.* "Given the difficulty in separating factual and evaluative materials, most courts weigh this factor in light of the relevant importance of the materials to plaintiffs' case." Tuitte, 181 F.R.D. at 180. As discussed herein, the presence and even the absence of specific articulated considerations in reaching the determination to restrict speech activities by banning sign supports is relevant to Plaintiff's claims. The scope of materials sought is narrow and not over-reaching and is calculated to be important to plaintiff's claims. This factors weights strongly in favor of disclosure.

5. *Whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question.* The party is not. Some courts consider it to be a factor in favor of disclosure where a defendant's constitutional rights are at stake, which is not the case here. However, this case is not a run of the mill commercial litigation either. It involves the

31

constitutional rights of the plaintiff organization, as well as by extension to all others who may be similarly situated and would seek to engage in political expression using signs at an Inaugural parade and all those who would wish to see such messaging or whose views are represented by those who are actually physically present at the parade route. At its essence, the case is about one important element and circumstance within the functioning of a constitutional democracy. This factor, where understood to reflect the importance of preserving and protecting constitutional rights, weighs strongly in favor of disclosure.

6. *Whether the police investigation has been completed.* There is no subject investigation, which in many ways underscores the inapplicability of this privilege. This weighs strongly in favor of disclosure.

7. *Whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation.* There is no investigation. No disciplinary investigations are extant or anticipated in connection with the issues presented. This factor weighs in favor of disclosure.

8. *Whether the plaintiff's suit is non-frivolous and brought in good faith.* Plaintiff's suit is. As reflected in the background section, above, the discovery to date has demonstrated or evidenced that the Government narrative and explanation regarding the decision to ban sign supports is false and pretextual. A proper presentation of issues requires disclosure of the actual bases relied upon, or disclosure of the absence of disclosed bases in contemporaneous communications which can evidence pretext or post-hoc manufacturing of purported bases solely for the purposes of litigation but not actually relied upon in the decision making. This factor weighs strongly in favor of disclosure.

9. *Whether the information sought is available through other discovery or from other sources.* This information is absolutely not available through other discovery or sources. It is contained solely and exclusively within the knowledge and possession of the Government, except to the extent that it was shared with the 2005 Presidential Inaugural Committee or others. However the 2005 PIC has long since dissolved. As the information pertains to government decisions and decision making, the sole source of complete information is the Government. This factor weighs strongly in favor of disclosure.

10. *The importance of the information sought to the plaintiff's case.* The information is very important. Both the presence and the absence of articulated bases for the ban on sign supports and other information pertaining to the underinclusiveness or overbreadth of the restrictions or on improper motivation is important and relevant. This information goes to the heart of Plaintiff's claims. Furthermore, the scope of materials sought has been substantially narrowed and focused both by Plaintiff and as a natural consequence of the focusing of issued through this long running litigation process. This factor weighs strongly in favor of disclosure.

The materials at issue in this case are, of course, distinctive in content from those at issue in McNamara. They are not undercover field intelligence reports. They are intra-governmental materials pertaining to a policy making process that infringes on fundamental constitutional rights. None has been identified as relating to or disclosing a confidential informant. None has been identified as reflecting witness statements to law enforcement. To compare the materials in McNamara to the materials at issue here is a case of apples versus oranges. For reasons stated above, the McNamara ruling in the abstract should not be followed or imported into this Circuit. Given that the McNamara ruling conflicts, or at the very least directs a radically and substantially different weight to be assigned, to the balancing interests that the D.C. Circuit has mandated be considered in the binding case of In re Sealed Case, it should have not influence in this case.

For reasons stated above, a proper balancing of interests under the factors required to be balanced by D.C. Circuit precedent, the identified and challenged materials should be disclosed.

March 12, 2012                          Respectfully submitted,


                                        /s/    Carl Messineo
                                        Carl Messineo (#450033)
                                            cm@justiceonline.org
                                        Mara Verheyden-Hilliard (#450031)
                                            mvh@justiceonline.org
                                        PARTNERSHIP FOR CIVIL JUSTICE FUND
                                        617 Florida Ave. NW
                                        Washington, DC 20001
                                        (202) 232-1180
                                        (202) 747-7747 fax