UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                         )
A.N.S.W.E.R. COALITION,                  )
                                         )
        Plaintiff,                       )
                                         )
    v.                                   )   Civil Action No. 05-0071 (PLF)
                                         )
KEN SALAZAR, Secretary,                  )
   United States Department of the Interior, et al., )
                                         )
        Defendants.¹                     )
                                         )
_____)
```

OPINION

Plaintiff A.N.S.W.E.R. (Act Now to Stop War and End Racism) Coalition ("ANSWER") filed this lawsuit in January 2005 against the Secretary of the Interior, the Director of the National Park Service ("NPS"), and the Director of the Secret Service, challenging the constitutionality of certain policies that restrict ANSWER's ability to engage in expressive activity during the Presidential Inaugural Parade in Washington, D.C. This matter is now before the Court on the Secretary of the Interior's motion on behalf of NPS to dismiss ANSWER's Supplemental Pleading in part, for lack of subject matter jurisdiction. The Secretary claims that ANSWER lacks standing to challenge the regulations governing access to the parade route to the extent that the regulations apply to areas outside of Freedom Plaza on Pennsylvania Avenue. After carefully considering the parties' papers, the relevant legal authorities, and the entire record

---

[1]   Jonathan Jarvis, the current Director of the National Park Service, has been substituted for former Director Mary Bomar, and Mark Sullivan, the current Director of the Secret Service, has been substituted for former Director W. Ralph Basham pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

in this case, the Court concludes that ANSWER has met its burden of showing standing at the pleadings stage, such that ANSWER may pursue its claim in full.[2] The Court therefore denies the Secretary's motion to dismiss.

## I. BACKGROUND

The pending motion stems from ANSWER's ongoing efforts to secure sufficient space for its members and affiliates to engage in political dissent during the Presidential Inaugural Parade. This Court has previously described the factual and procedural background of this case. See A.N.S.W.E.R. Coalition v. Kempthorne, 493 F. Supp. 2d 34, 37-41 (D.D.C. 2007) ("ANSWER I"); A.N.S.W.E.R. Coalition v. Kempthorne, 537 F. Supp. 2d 183, 186-93 (D.D.C. 2008) ("ANSWER II"); A.N.S.W.E.R. Coalition v. Salazar, Civil Action No. 05-0071, at 2-4 (D.D.C. March 5, 2012) ("ANSWER III"). It therefore will limit its discussion accordingly.

ANSWER is an unincorporated grassroots organization that engages in political organizing and activism in opposition to war and racism. Am. Compl. ¶ 1. Every four years since 2005, ANSWER has attempted to organize a mass demonstration along Pennsylvania Avenue to engage in political dissent during the Presidential Inaugural Parade. Id.; Supp. Pleading ¶ 1. This dispute arises from National Park Service regulations, as now amended, that grant the Presidential Inaugural Committee ("PIC") exclusive access to some of these same areas

---

[2]   The papers reviewed in connection with the pending motion include: plaintiff's amended complaint ("Am. Compl.") [Dkt. No. 17]; plaintiff's supplemental pleading ("Supp. Pleading") [Dkt. No. 144]; defendant's motion to dismiss in part for lack of subject matter jurisdiction ("Def.'s Mot.") [Dkt. No. 146]; plaintiff's brief in opposition to defendant's motion ("Pl.'s Opp.") [Dkt. No. 155] including Exhibit 1, Affidavit of Brian Becker ("Becker Decl."); and defendant's reply brief in support of its motion to dismiss in part ("Def.'s Reply") [Dkt. No. 158].

on and in connection with events relating to the Presidential Inauguration.  See 36 C.F.R. § 7.96(g)(4)(iii) (2012).

*A. Statutory and Regulatory Framework*

The Department of the Interior has the authority to issue and implement, through NPS, rules and regulations that oversee the use of federal grounds within the National Park System.  See 16 U.S.C. §§ 1, 3.  Pursuant to this authority, NPS has promulgated regulations for a permitting system that allows the use of National Park System land around the national capital region for special events and demonstrations.  See generally 36 C.F.R. § 7.96(g).  The Secretary has additional statutory authority under the Presidential Inaugural Ceremonies Act to "grant to the Inaugural Committee a permit to use [federal] reservations or grounds during the inaugural period."  36 U.S.C. § 503(a).

When ANSWER initiated this suit in 2005, the relevant NPS regulations set aside only the White House sidewalk and three-quarters of Lafayette Park for the exclusive use of the PIC for inaugural activities.  36 C.F.R. § 7.96(g)(4)(i)(F) (2005).[3]  The regulations provided that permits for demonstrations and special events for other areas would be issued on a first-come, first-served basis, id. at § 7.96(g)(4)(i), and NPS had a "strict policy" to not "accept any permit applications submitted more than one year in advance of the start date for any event on Park Services land."  ANSWER II, 537 F. Supp. 2d at 186-87.  In practice, however, NPS deviated from its policy and submitted permit applications for itself over a year in advance of Inauguration Day activities to reserve for the PIC over one-third of the sidewalk space on Pennsylvania

---

[3]      In 1996, the sidewalks abutting Pennsylvania Avenue were designated as federal lands and became subject to NPS' regulatory authority.  See ANSWER II, 537 F. Supp. 2d at 198.

Avenue between 4th Street and 15th Street, Northwest, in addition to the Lafayette Park and White House sidewalk areas set aside by regulation.  See id. at 187, 190.

*B. Procedural History*

ANSWER's first claim ("Count I") challenged NPS' actions to exempt itself and the PIC from the relevant permitting regulations.  Am. Compl. ¶¶ 87-97.  ANSWER's second claim ("Count II") challenged the Secret Service's prohibition on supports for signs and placards.  Id. ¶¶ 98-102.  ANSWER's third claim ("Count III") challenged NPS' policy of granting to the PIC exclusive use of space along the parade route, regardless of whether such policy was inconsistent with NPS' regulations.  Id. ¶¶ 103-08.  ANSWER asserted that the conduct described in each count violated the First Amendment and the Equal Protection Clause, and requested declaratory and injunctive relief, including a "[d]eclaratory judgment that the NPS policy and practice of granting to the PIC exclusive use of the public space abutting the Inaugural Parade route is unconstitutional; an injunction prohibiting such discriminatory conduct in the future; and a mandatory injunction that the NPS make the sidewalks abutting the Inaugural Parade generally open for the public for use[.]"  Id. at 27.  ANSWER did not challenge the regulatory set-aside of the White House sidewalk and Lafayette Park.  Id. ¶ 104.

The Court addressed the justiciability of ANSWER's claims in an Opinion and Order dated June 13, 2007, in which the Court held that ANSWER had both organizational and representational standing to challenge NPS' then-uncodified policy and practice of granting PIC exclusive use of public space along the parade route.  See ANSWER I, 493 F. Supp. 2d at 42-48.  NPS then moved for summary judgment on Counts I and III, and ANSWER moved for summary

judgment on Count I.  See ANSWER II, 537 F. Supp. 2d at 192-93.[4]  In an Opinion and Order dated March 20, 2008, the Court denied NPS' motion for summary judgment and granted ANSWER's motion for summary judgment on Count I.  See ANSWER II, 537 F. Supp. 2d at 206.  The Court held that NPS' "policy and practice of exempting itself and/or the [PIC] from compliance with the generally applicable permitting regulations, 36 C.F.R. § 7.96(g) [was] unconstitutional" and enjoined NPS from doing so "with respect to events relating to the Inauguration."  Id.  The Court also denied NPS' motion for summary judgment on Count III.  Noting that the Inauguration is a public event at which protestors have a right to engage in political speech, the Court rejected the government's argument that ANSWER was "not entitled to 'insert itself into PIC's permitted activities.'"  Id. at 204 (internal citation omitted).  The Court did not reach the question of "[h]ow much, if any, of the Pennsylvania Avenue sidewalks can be reserved for the exclusive use of the government and its ticketed guests on Inauguration Day."  Id. at 205-06.

Following the Court's decision, NPS amended its regulations regarding permits for demonstrations and special events for Inaugural activities.  See Areas of the National Park System, National Capitol Region, 73 Fed. Reg. 67,739 (Nov. 17, 2008); 36 C.F.R. § 7.96(g)(4).  The regulations now provide, in relevant part:

> (i) NPS processes permit applications for demonstrations and
> special events in order of receipt.  NPS will not accept applications
> more than one year in advance of a proposed continuous event
> (including set-up time, if any). Use of a particular area is allocated

---

[4]  Neither party moved for summary judgment on Count II, see ANSWER II, 537 F. Supp. 2d at 191, and the parties are currently engaged in discovery regarding Count II before Magistrate Judge Kay.

>in order of receipt of fully executed applications, subject to the limitations in this section.
>
>. . .
>
>(iii) In connection with Presidential Inaugural Ceremonies the following areas are reserved for priority use as set forth in this paragraph.
>
>>(A) The White House sidewalk and Lafayette Park, exclusive of the northeast quadrant for the exclusive use of the Presidential Inaugural Committee on Inaugural Day.
>>
>>(B) Portions of Pennsylvania Avenue, National Historic Park and Sherman Park, as designated in the maps included in paragraph (g)(4)(iii)(E) of this section, for the exclusive use of the Presidential Inaugural Committee on Inaugural Day for:
>>
>>>(1) Ticketed bleachers viewing and access areas, except that members of the public may use a ticketed bleacher seat that has not been claimed by the ticket holder 10 minutes before the Inaugural Parade is scheduled to pass the bleacher's block[.]

36 C.F.R. § 7.96(g)(4). The referenced maps show reserved PIC bleacher space on portions of Pennsylvania Avenue between 7th Street and 15th Street, Northwest, including most of Freedom Plaza (located on Pennsylvania Avenue between 13th Street and 14th Street), and parts of Sherman Park (located at 15th Street and Pennsylvania Avenue). 36 C.F.R. § 7.96(g)(4)(iii)(E). According to NPS, these regulations grant the PIC additional priority and exclusive use of approximately fourteen percent of Pennsylvania Avenue along the Inaugural Parade route. ANSWER III at 10 (citing Defendant's Opposition to Plaintiff's Motion to Enforce Injunction, Dkt. No. 111 at 8, 25).

   ANSWER subsequently filed a motion to enforce the injunction against NPS on the grounds that the amended regulations violated the Court's March 20, 2008 Order. See Dkt.

No. 105.  The Court denied that motion.  ANSWER III at 16.  Although the amended regulations expanded the reach of the regulatory set-aside, the Court found that they did not contravene the terms of the Court's injunction, which merely enjoined NPS' practice of deviating from its regulations and established policies in order to discriminate in favor of PIC.  ANSWER III at 12-14.  Although the Court concluded that the injunction did not preclude the expansion of the regulatory set-aside,"[t]hat conclusion does not mean that NPS' amended regulations are constitutional; it just means that the Court has not addressed the issue."  Id. at 14-15.  The Court then granted ANSWER leave to file a supplemental pleading containing facial and as-applied challenges to 36 C.F.R. § 7.96(g)(4)(iii)(B).  Id. at 16; see also Plaintiff's Unopposed Motion for Leave to File Supplemental Complaint, Dkt. No. 132.

### C. ANSWER's Supplemental Pleading

ANSWER presents a fourth claim in its Supplemental Pleading, which alleges that the expanded regulatory set-aside, 36 C.F.R. § 7.96(g)(4)(iii)(B)(1), does not constitute a reasonable time, place, and manner restriction, and favors individuals affiliated with the administration while disfavoring others, in violation of the First Amendment and the Equal Protection Clause ("Count IV").  Supp. Pleading ¶¶ 10, 14, 21-23.  ANSWER challenges the regulations on their face and as applied to ANSWER and its members.  Id. ¶ 15.

Along with the Supplemental Pleading, ANSWER enclosed its application for a permit to conduct a demonstration relating to the 2013 Inauguration at and around Freedom Plaza.  See Supp. Pleading Attachment 1.  ANSWER also included NPS' confirmation of its first-in-time application, in which NPS informed ANSWER of the regulatory priority for certain

designated areas at Freedom Plaza relating to the Inaugural Parade.  See Supp. Pleading Attachment 2.  Under the regulatory priority, although ANSWER's application was "deemed granted," NPS retained authority to revoke ANSWER's permit for any parts of Freedom Plaza that the PIC intended to use once the PIC formed in November 2012.  Id.

ANSWER now requests declaratory and permanent injunctive relief and asks the Court to hold 36 C.F.R. § 7.96(g)(4)(iii)(B)(1) unconstitutional, enjoin its operative effect, and order NPS to remove from the incorporated regulatory maps those areas reserved for the "PIC Bleacher area."  Supp. Pleading ¶ 26(a).

### D. The Government's Motion to Dismiss

The Secretary of the Interior filed the instant motion to dismiss the Supplemental Pleading in part for lack of standing, arguing that ANSWER impermissibly seeks relief that is far broader than its injury.  Because ANSWER's permit application was limited to Freedom Plaza, NPS contends that ANSWER has standing "only to the extent that the regulation grants a regulatory preference to PIC's Bleacher Area *at Freedom Plaza*."  Def.'s Mot. at 6 (emphasis added).  Moreover, to the extent that ANSWER asserts injury related to other areas along Pennsylvania Avenue, NPS contends that ANSWER alleged such injury only in its opposition papers and failed to include such allegations in its pleadings.  See Reply at 2.

## II. LEGAL STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(1)

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing that the Court has jurisdiction.  See Sierra Club v.

Jackson, 813 F. Supp. 2d 149, 154 (D.D.C. 2011) (citing Brady Campaign to Prevent Gun Violence v. Ashcroft, 339 F. Supp. 2d 68, 72 (D.D.C. 2004)). "While the burden of production to establish standing is more relaxed at the pleading stage than at summary judgment, a plaintiff must nonetheless allege "'general factual allegations of injury resulting from the defendant's conduct.'" Nat'l Ass'n of Home Builders v. E.P.A., 667 F.3d 6, 12 (D.C. Cir. 2011); see also NB ex. rel. Peacock v. District of Columbia, 682 F.3d 77, 82 (D.C. Cir 2012) (noting that "at the pleadings stage, 'the burden imposed' on plaintiffs to establish standing 'is not onerous'"). The Court must accept all well-pled factual allegations in the complaint as true, but may in appropriate cases consider certain materials outside the pleadings. See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005). The Court must construe the complaint liberally in the plaintiff's favor, but the Court need not accept factual inferences drawn by the plaintiff if those inferences are not supported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions. See Sierra Club v. Jackson, 813 F. Supp. 2d at 154 (citing Primex Recoveries, Inc. v. Lee, 260 F. Supp. 2d 43, 47 (D.D.C. 2003)).

### B. Standing

"Because Article III limits the constitutional role of the federal judiciary to resolving cases and controversies, a showing of standing 'is an essential and unchanging' predicate to any exercise of [the Court's] jurisdiction." Nat'l Assn. of Home Builders v. E.P.A., 667 F.3d at 11. To establish standing, plaintiff must show "at an irreducible constitutional minimum": (1) that it has suffered an injury in fact; (2) that the injury is fairly traceable to defendant's conduct; and (3) that a favorable decision on the merits likely will redress the injury.

See ANSWER I, 493 F. Supp. 2d at 42 (citing Friends of the Earth v. Laidlaw Envtl. Serv. (TOC) Inc., 528 U.S. 167, 180-81 (2000)); see also Worth v. Jackson, 451 F.3d 854, 857-58 (D.C. Cir. 2006).  The alleged injury must be concrete and particularized, and actual or imminent, not conjectural, hypothetical, or speculative.  See Friends of the Earth v. Laidlaw Envtl. Serv. (TOC) Inc., 528 U.S. at 180-81; Worth v. Jackson, 451 F.3d at 858.  "The standing inquiry is particularly rigorous when a court is considering the asserted unconstitutionality of actions taken by another branch of the government."  Nat'l Fed'n of Indep. Business v. Architectural & Transp. Barriers Compliance Bd., 461 F. Supp. 2d 19, 23 (D.D.C. 2006) (citing Raines v. Byrd, 521 U.S. 811, 819 (1997)).

To sue on its own behalf, an organizational plaintiff must "demonstrate that it has suffered injury in fact" that concretely and demonstrably injures the organization's resources, constituting "more than simply a setback to the organization's abstract social interests."  Nat'l Ass'n of Home Builders v. E.P.A., 667 F.3d at 11 (internal quotations omitted).  An association also may have representational standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  Id. at 12.

III. DISCUSSION

The government does not dispute that ANSWER has standing to challenge the regulatory preference in the amended regulations for the PIC bleacher area at Freedom Plaza. Def.'s Mot. at 5-6.  As detailed above, NPS contends that ANSWER can challenge only the

bleacher area within Freedom Plaza because ANSWER's injury is limited to the effect of the Freedom Plaza permit denial.  <u>Id</u>. at 5.  According to NPS, ANSWER "cannot demonstrate standing to challenge the Park Service's amended regulations as they pertain to areas other than the PIC Bleacher Area at Freedom Plaza, because such provisions have no concrete effect on plaintiff."  <u>Id</u>.  To the extent that ANSWER intends to use space in areas other than Freedom Plaza, NPS argues that ANSWER did not state this intention in its Supplemental Pleading and is thus barred from relying upon its intention to show injury.  Def.'s Reply at 5.

NPS' arguments against ANSWER's recently added claim – which challenges the regulations both on their face and as applied – fail.  By alleging in its Supplemental Pleading that its permit application was denied because of the challenged regulations, ANSWER has made the requisite showing of injury to establish organizational and representational standing for purposes of a facial challenge.  In addition, by alleging in its Amended Complaint and Supplemental Pleading that it plans to engage in protests along Pennsylvania Avenue at the upcoming Inaugural Parade, ANSWER has shown the requisite injury (at least at the pleadings stage of this litigation) to establish organizational and representational standing to challenge the regulations as applied to sidewalk areas outside of Freedom Plaza.

*A. ANSWER Has Alleged Injury Sufficient to Establish Standing for Facial Challenge*

ANSWER challenges the regulations on their face and as-applied.  <u>See</u> Supp. Pleading ¶ 15.  In a facial challenge, the plaintiff seeks to invalidate a statute or regulation, or portions thereof, and obtain a permanent injunction against its enforcement.  <u>See</u>, e.g., <u>Gonzales v. Carhart</u>, 550 U.S. 124, 127 (2007) (reviewing facial challenge to abortion law); <u>McConnell v.</u>

Federal Election Comm'n, 540 U.S. 93, 134 (2003) (reviewing facial challenge to campaign finance law). By definition, the relief sought in a facial challenge sweeps more broadly than the relief required to redress the particular plaintiff's injury. As a result, the plaintiff must show that the law is invalid not only as applied to plaintiff, but also as applied in many or all other circumstances, even though the plaintiff is not subject to every possible application. See United States v. Stevens, 130 S. Ct. 1577, 1587 (2010) ("To succeed in a typical facial attack, [plaintiff] would have to establish 'that no set of circumstances exists under which [the law] would be valid'") (internal citations omitted); Gonzales v. Carhart, 550 U.S. at 167 (noting cases requiring plaintiff to show that law would be invalid "in a large fraction of the cases in which [it] is relevant").

        A plaintiff presenting a facial challenge still must show an injury to establish Article III standing. See Anderson v. Holder, 647 F.3d 1165, 1172 (D.C. Cir. 2011). But there is no question that ANSWER has made that showing here, as defendants agree that ANSWER has demonstrated injury with regard to Freedom Plaza. Def.'s Mot. at 5-6 ("Plaintiff has standing to challenge the Park Service's 2008 amended regulation . . . only to the extent that the regulation grants a regulatory preference to PIC's Bleacher Area at Freedom Plaza."). Furthermore, the Court previously held that ANSWER had organizational and representational standing to litigate claims with respect to denials of permit applications for areas along the 2009 Inaugural Parade route. See ANSWER I, 493 F. Supp. 2d at 45 (D.D.C. 2007).

        Accordingly, the Court finds that plaintiff's facial challenge survives defendant's motion to dismiss plaintiff's supplemental pleading in part. If ANSWER were to prevail on its

facial challenge to 36 C.F.R. § 7.96(g)(4)(iii)(B)(1), that regulatory provision would be enjoined in its entirety.

*B. ANSWER Has Adequately Pled its Intent to Use Space Outside of Freedom Plaza*

NPS' motion seems to attack ANSWER's as-applied challenge on two grounds. NPS argues that ANSWER, in its supplemental complaint, never alleged that it planned to use areas outside of Freedom Plaza, and thus cannot show injury. See, e.g., Def.'s Mot. at 2-3; Def.'s Reply at 2. NPS also suggests that a permit denial is necessary for plaintiff to demonstrate standing. See id. at 2. The Court disagrees and finds that ANSWER has pled an interest in accessing sidewalk space outside of Freedom Plaza, and that ANSWER has sufficiently shown injury resulting from the application of the regulations to that area.

The Supplemental Pleading must be viewed in conjunction with the Amended Complaint. See 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, AND RICHARD L MARCUS, Federal Practice and Procedure § 1504 at 254 (3d ed. 2010) (Supplemental pleadings, in contrast to amended pleadings, "deal with events subsequent to the pleading to be altered and *represent additions to or continuations of the earlier pleadings*.") (emphasis added). Read together, these pleadings indicate that ANSWER and its members and affiliates intend to access the entirety of the parade route along Pennsylvania Avenue at each Inaugural Parade. See e.g. Am. Compl. ¶ 1 ("ANSWER Coalition has concrete plans to organize mass demonstration activity for the 2009 Inaugural Parade route *and for the foreseeable future*, and seeks to line the Inaugural Parade route with protesters and activists.") (emphasis added); id. ¶ 77 ("ANSWER's interests lie both in securing space for use as a rally and assembly site(s) and to ensure that ANSWER and those affiliated with ANSWER or who support its political message have the

ability to line the parade route with a mass demonstration of collective action."); id. ¶ 105 ("The intended expressive activity of the demonstrators is to *collectively line the parade route* with their signs, their bodies and to amplify their presence with their collective voices.") (emphasis in original).  Although the Supplemental Pleading focuses primarily on the restrictions on ANSWER's access to Freedom Plaza, which ANSWER plans to use as a rally and assembly site, this pleading does not indicate that ANSWER had abandoned its intention to line the parade route at the 2013 Presidential Inaugural Parade.

While the Court finds ANSWER's pleadings sufficient, it may also consider materials outside of the pleadings to resolve a motion to dismiss for lack of subject matter jurisdiction.  See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d at 1253-54; ANSWER I, 493 F. Supp. 2d at 46 (considering affidavit attached to opposition brief when analyzing standing); Vietnam Veterans of Am. v. Peake, Civil No. 08-1934, 2009 WL 6179013 at *2 (D.D.C. June 23, 2009) (same).  NPS has submitted no evidence to counter ANSWER's assertion that it intends to use space beyond Freedom Plaza during the 2013 Inauguration.  In contrast, ANSWER has filed a declaration of the organization's National Director, Brian Becker, who states that ANSWER anticipates that ten thousand or more members and affiliates will come to Washington for the Inauguration, intending to engage in free expression activities along the route.  See Becker Decl.  According to ANSWER, "[t]he sheer number of ANSWER coalition constituents anticipated to be present along the Inaugural Route will exceed the capacity of Freedom Plaza, and will necessitate the presence of persons in locations along the route including in areas designated as 'PIC Bleacher Areas on NPS regulatory maps.'"  Id. ¶ 10.  These members, along with others who may not make it to Freedom Plaza because of pedestrian traffic and security

checkpoints, will instead "fill[] in along the parade route on a first come first serve basis." Pl.'s Opp. at 9.

For the foregoing reasons, the Court concludes that ANSWER has pleaded facts sufficient to demonstrate its interest in accessing portions of the Inaugural Parade route beyond Freedom Plaza.

*C. ANSWER's Lack of Permit for Areas Outside of Freedom Plaza Does Not Deprive ANSWER of Standing to Challenge the Set-Aside in those Areas*

This Court noted in ANSWER I that plaintiff had organizational and representational standing to litigate claims related to an anticipated permit denial in 2008, as "the courts 'have consistently treated a license or permit denial pursuant to a state or federal administrative scheme as an Article III injury.'" ANSWER I, 493 F. Supp. 2d at 45, 47 (citing Parker v. District of Columbia, 478 F.3d 370, 376 (D.C. Cir. 2007)).  A permit denial, however, is not a prerequisite to establish standing. See, e.g., Dearth v. Holder, 641 F.3d 499, 502 (D.C. Cir. 2011) (upholding plaintiff's claim against standing challenge in the absence of permit denial).  The fact that ANSWER did not apply for, and thus was not denied, a permit for sidewalk space along Pennsylvania Avenue does not bar ANSWER from establishing standing with respect to its lack of access to those areas.

ANSWER maintains, and NPS does not contest, that ANSWER is not required to obtain a permit to engage in its intended conduct along Pennsylvania Avenue, which includes lining the parade route on a first-come, first-served basis, and peacefully distributing leaflets and literature.  Pl.'s Opp. at 4 n.4; Becker Decl. ¶¶ 6-12.  A permit generally is not needed to engage

in this kind of conduct; in fact, ANSWER asserts that it has previously attempted to file permit applications for non-exclusive use of public sidewalks, but that these applications have been rejected by NPS on the grounds that "no permit or request is needed for such assembly." Pl.'s Opp. at 4 n.4.  But for the presence of the reserved PIC bleachers, ANSWER and its members would be able to join other members of the public in lining the parade route along Pennsylvania Avenue.[5]

ANSWER has sufficiently alleged that the challenged regulation injures both ANSWER's members and the organization itself—specifically, that the regulation interferes with their asserted First Amendment and Fourteenth Amendment rights to assemble and engage in political dissent along the Inaugural Parade route.  This injury is "concrete and particularized." See In re Navy Chaplaincy, 697 F.3d 1171, 1175 (D.C. Cir 2012); Am. Compl. ¶ 1 ("ANSWER Coalition has concrete plans to organize mass demonstration activity for the 2009 Inaugural Parade route *and for the foreseeable future*, and seeks to line the Inaugural Parade route with protesters and activists."); Becker Decl. ¶¶ 2-3 (ANSWER "anticipates in excess of ten thousand persons, and potentially tens of thousands of persons" to come to Washington with the intent to "collectively line the parade route.").  The alleged injury is "fairly traceable" to NPS' conduct –

---

[5]   ANSWER notes that NPS filed its own permit application for Freedom Plaza and other portions of Pennsylvania Avenue on behalf of the PIC and pursuant to the Presidential Inaugural Ceremonies Act, after ANSWER submitted its application.  Supp. Pleading ¶ 5.  Thus, while ANSWER had the first-in-time application for Freedom Plaza, NPS may have had the first-in-time application for other portions of Pennsylvania Avenue.  NPS does not address whether this application exists, and it is unclear whether it was submitted to provide a separate and independent basis for granting the PIC exclusive use of certain areas on Pennsylvania Avenue (an action that arguably falls within the scope of ANSWER's third claim against NPS), or whether NPS' permit application is merely the implementation of the revised regulations (conduct that would fall within the scope of ANSWER's fourth and newest claim).

specifically, NPS' anticipated enforcement of regulations that reserve portions of Pennsylvania Avenue for exclusive PIC use – and a favorable declaration from this Court would "likely . . . redress" ANSWER's injury.  See In re Navy Chaplaincy, 697 F.3d at 1175 (citing Lujan v. Defenders of Wildlife, 504 U.S. at 560-61). NPS has not provided any evidence or legal authority to the contrary.  The Court therefore concludes that ANSWER has met its burden of presenting factual allegations of injury resulting from NPS' conduct sufficient to support its as-applied challenge to the regulatory set-aside of both Freedom Plaza and other portions of the Inaugural Parade route.

## IV. CONCLUSION

The facts as alleged in ANSWER's pleadings, and supported in its briefs and declaration, suffice to show that ANSWER has standing to challenge the PIC regulatory set-aside in 36 C.F.R. § 7.96(g)(4)(iii)(B)(1), on its face and as applied to ANSWER and its members. Accordingly, the Court will deny the Secretary's motion to dismiss in part for lack of subject matter jurisdiction.

An Order consistent with this Opinion will issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
DATE:   January 14, 2013                                   United States District Judge